KELLIE M. MURPHY, ESQ. (SBN 189500)
MARIA E. MINNEY, ESQ. (SBN 289131)
JOHNSON SCHACHTER & LEWIS
A Professional Law Corporation
Point West Commerce Centre
1545 River Park Drive, Suite 204
Sacramento, CA 95815
Telephone: (916) 921-5800
Facsimile: (916) 921-0247
E-mail: kellie@jsl-law.com / maria@jsl-law.com

Attorneys for DEFENDANT:
HUMANITY FOR HORSES

# UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF CALIFORNIA

## SACRAMENTO DIVISION

| | |
|---|---|
| JERRY FUENTES, an Individual,<br><br>  Plaintiff,<br><br>v.<br><br>HUMANITY FOR HORSES, a California Non-Profit Corporation; CLAUDIO RUBIO, an Individual, and DOES 1 through 10, inclusive,<br><br>  Defendants. | CASE NO.<br><br>**NOTICE OF REMOVAL OF ACTION UNDER 28 U.S.C. § 1441(a) FEDERAL QUESTION**<br><br>Superior Cmplt. Filed: November 5, 2021<br>Removed: December 17, 2021<br>Trial Date: None Set |

TO THE CLERK OF THE ABOVE-ENTITLED COURT:

PLEASE TAKE NOTICE that Defendant HUMANITY FOR HORSES ("Defendant")

hereby removes to this Court, the state court action described below.

1. On November 5, 2021, an action was commenced in the Superior Court of the

State of California in and for the County of Siskiyou, entitled *Jerry Fuentes, an Individual v.*

*Humanity for Horses, a California Non-Profit Corporation; Claudio Rubio, an Individual, and*

*DOES 1 through 10, inclusive*, as Case Number CVCV-2021-001194. A copy of the Complaint

is attached hereto as **Exhibit A**.

JOHNSON SCHACHTER & LEWIS
A PROFESSIONAL LAW CORPORATION
1545 RIVER PARK DRIVE, SUITE 204
SACRAMENTO, CA 95815
TELEPHONE: (916) 921-5800 / FACSIMILE: (916) 921-0247

1

2.     This is a civil action of which this Court has original jurisdiction under 28 U.S.C. § 1332, and is one which may be removed to this Court by Defendants pursuant to the provisions of 28 U.S.C. § 1441(a) in that it arises under 29 U.S.C.A. §2601, as alleged in Plaintiff's Complaint. (See Exhibit A, pp. 22 – 24, ¶¶122 – 138.)

3.     The first date on which Defendant received a copy of the Complaint was November 17, 2021 when Defendant was served with a copy of the Complaint and Summons.  A copy of all documents served on Defendant to date in this action are attached hereto as **Exhibit B**.  The Complaint has not been served on Defendant Rubio.

4.     Defendant is represented by the law firm of Johnson Schachter & Lewis, a P.L.C., and has consented to this removal.

Dated:  December 17, 2021

JOHNSON SCHACHTER & LEWIS
A Professional Law Corporation

By: _____
KELLIE M. MURPHY
MARIA E. MINNEY
Attorneys for Defendant
HUMANITY FOR HORSES

**JOHNSON SCHACHTER & LEWIS**
A PROFESSIONAL LAW CORPORATION
1545 RIVER PARK DRIVE, SUITE 204
SACRAMENTO, CA 95815
TELEPHONE: (916) 921-5800 / FACSIMILE: (916) 921-0247

**NOTICE OF REMOVAL OF ACTION UNDER 28 U.S.C. § 1441(a) FEDERAL QUESTION**

EXHIBIT A

COPY

Neama Rahmani (State Bar No. 223819)
   *efilings@westcoasttriallawyers.com*
Ronald L. Zambrano (State Bar No. 255613)
   *ron@westcoasttriallawyers.com*
Crystal F. Mohsin (State Bar No. 333299)
   *crystal@westcoasttriallawyers.com*
WEST COAST EMPLOYMENT LAWYERS, APLC
1147 South Hope Street
Los Angeles, California 90015
Telephone: (213) 927-3700
Facsimile: (213) 927-3701

Attorneys for Plaintiff,
JERRY FUENTES

SUPERIOR COURT OF CALIFORNIA
COUNTY OF SISKIYOU

NOV -5 2021
Embossed - T. O'Brion
BY:_____
DEPUTY CLERK

File By Fax

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF SISKIYOU

| | |
|---|---|
| JERRY FUENTES, an Individual,<br><br>      Plaintiff;<br><br>      v.<br><br>HUMANITY FOR HORSES, a California Non-Profit Corporation; CLAUDIO RUBIO, an Individual, and DOES 1 through 10, inclusive,<br><br>      Defendants. | Case No.: CVCV 21-1194<br><br>**COMPLAINT FOR DAMAGES**<br>1) FEHA DISABILITY DISCRIMINATION;<br>2) FAILURE TO ACCOMMODATE IN VIOLATION OF FEHA;<br>3) FAILURE TO ENGAGE IN THE INTERACTIVE PROCESS IN VIOLATION OF FEHA;<br>4) DISCRIMINATION ON THE BASIS OF NATIONAL ORIGIN;<br>5) HARASSMENT ON THE BASIS OF NATIONAL ORIGIN;<br>6) HOSTILE WORK ENVIRONMENT;<br>7) FEHA RETALIATION;<br>8) VIOLATION OF THE FAMILIES FIRST CORONAVIRUS RESPONSE ACT (FFCRA);<br>9) VIOLATION OF LABOR CODE §§226.7 & 512 (FAILURE TO PROVIDE MEAL AND REST BREAKS);<br>10) VIOLATION OF LABOR CODE §§ 510, 1194, & 1198 (UNPAID OVERTIME);<br>11) VIOLATION OF LABOR CODE §§ 226(A) (INACCURATE WAGE STATEMENTS);<br>12) VIOLATION OF LABOR CODE §§ 200-204 (WAITING TIME PENALTIES); AND<br>13) VIOLATION OF CALIFORNIA BUSINESS & PROFESSIONS CODE §§17200, ET SEQ.<br><br>**DEMAND FOR JURY TRIAL** |

COMPLAINT AND DEMAND FOR JURY TRIAL

1

COMES NOW the Plaintiff, JERRY FUENTES (who hereinafter shall be referred to as the "Plaintiff" or as "FUENTES"), who hereby respectfully alleges, avers, and complains, as follows:

## INTRODUCTION

1. This is an action brought by the Plaintiff, JERRY FUENTES, pursuant to California statutory, decisional, and regulatory laws. Plaintiff was an employee of Defendant, HUMANITY FOR HORSES, (hereinafter "Defendant" or "HFH"), at all times herein mentioned.

2. Plaintiff alleges that California statutory, decisional, and regulatory laws prohibit the conduct by Defendants herein alleged, and therefore Plaintiff has an entitlement to monetary relief on the basis that Defendants violated such statutes, decisional law, and regulations.

## JURISDICTION AND VENUE

3. Jurisdiction is proper in this court by virtue of the California statutes, decisional law, and regulations, and the local rules under the Siskiyou County Superior Court Rules.

4. Venue in this Court is proper in that Defendant HFH has a principal business address located in the City of Gazelle, County of Siskiyou, State of California.

## PARTIES

5. At all times herein mentioned, Plaintiff JERRY FUENTES, is and has been a resident of, Siskiyou County, State of California.

6. Defendant HFH is and at all times herein mentioned has been a California Non-Profit Corporation registered with the State of California, with the capacity to sue and to be sued, and

1    doing business, with a principal place of business located at 6523 Scarface Road, Gazelle,

2    California 96034.

3

4    7.   Defendant CLAUDIO RUBIO (hereinafter referred to as "RUBIO") was and at all times herein

5         mentioned an employee of Defendant HFH, and at all times herein mentioned was and, upon

6         information and belief, still is a resident of the County of Siskiyou, State of California.

7

8    8.   Pursuant to HFH's Statement of Information filed with the California Secretary of State,

9         Defendant DYLAN COLEMAN ("D. COLEMAN") is the Chief Executive Officer, KELLY

10        COLEMAN ("K. COLEMAN") is the Secretary and RICK JORDAN ("JORDAN") is the

11        Chief Financial Officer. Defendants D. COLEMAN, K. COLEMAN and JORDAN are

12        therefore liable for the claims alleged herein pursuant to Labor Code §558.1 because each

13        individual was and is an "other person" acting on behalf of HFH, who violates, or causes to be

14        violated, certain Labor Code sections herein.

15

16   9.   Plaintiff is informed and believes and thereon alleges that each of the Defendants herein were

17        at all times the agent, employee, or representative of each remaining Defendant and were at all

18        times herein acting within and outside the scope and purpose of said agency and employment.

19        Plaintiff further alleges that as to each Defendant, whether named, or referred to as a fictitious

20        name, said Defendants supervised, ratified, controlled, acquiesced in, adopted, directed,

21        substantially participated in, and/or approved the acts, errors, or omissions, of each remaining

22        Defendant.

23

24   10.  The true names and capacities of the Defendants named herein as DOES 1 through 10, inclusive,

25        whether individual, corporate, partnership, association, or otherwise, are unknown to Plaintiff

26        who therefore sues these Defendants by such fictitious names. Plaintiff will request leave of

27        court to amend this Complaint to allege their true names and capacities at such time as they are

28        ascertained.

## FACTUAL ALLEGATIONS

11. On or about August 16, 2016, Plaintiff FUENTES became employed by Defendant HFH, as a Helper.

12. In or about August 2018, RUBIO became Plaintiff's supervisor.

13. Between August 2018 and January 2021, Plaintiff was habitually denied his legally mandated, uninterrupted meal periods. During the entirety of Plaintiff's employment with Defendant, Plaintiff's meal break was interrupted or not provided at all. Specifically, RUBIO would often interrupt Plaintiff's lunch to make him work. When Plaintiff would inform RUBIO that he was unable to help because he was on his lunch break, RUBIO would reply, "You can eat later" and force Plaintiff to work even when there were other employees available on duty.

14. Throughout Plaintiff's employment with Defendant, Plaintiff was unable to take a meal break within his fifth hour of work. Plaintiff and other employees complained to RUBIO and would say, "Please let us go to lunch, we are hungry." RUBIO would deny their request and reply, "Well I'm not hungry yet."

15. Between August 2018 and January 2021, Plaintiff was denied the right to take a ten-minute rest break every day. RUBIO would deny Plaintiff's request for rest breaks and would say, "They pay you too much for the little that you do."

16. RUBIO would make Plaintiff work more than eight (8) hours a day, without paying Plaintiff an overtime rate for his overtime hours worked. RUBIO would tell Plaintiff, "If you work overtime, you can take more time off later." However, when Plaintiff asked for days off, RUBIO would make excuses, saying "it's too busy."

//

17. Plaintiff complained to RUBIO asking why he was not paid overtime and RUBIO responded, "you are getting paid on salary, you do not get overtime." However, Plaintiff was not a salaried employee.

18. Throughout Plaintiff's employment with Defendant, he was reprimanded more often and severely than other workers because of his nationality. When other workers made the same mistakes as Plaintiff, RUBIO, who is of Mexican nationality, would not discipline them. However, when Plaintiff did the same, Plaintiff would be insulted and told, "How can you be so stupid, Chilean" and "always problems with the Chilean" in front of other workers. Plaintiff is of Chilean nationality.

19. On or about July 2020, Plaintiff notified RUBIO that he would need foot surgery on both feet and would need three months off for each surgery. Plaintiff gave RUBIO his medical note that states that he required surgery on January 14, 2021. In response, RUBIO told Plaintiff, "Just a bunch of problems with you" and added, "for that time you're taking off, I'm not sure we will still have a job for you."

20. On or around August 6, 2020, Plaintiff tested positive for COVID. His doctor told him to take two weeks to quarantine and postpone his foot surgeries. Plaintiff promptly notified his supervisor, RUBIO, about him testing positive for COVID and gave RUBIO the doctor's note.

21. Plaintiff asked RUBIO if the two weeks of quarantine would be paid. RUBIO said he could not pay Plaintiff for those two weeks and suggested that Plaintiff use his accrued vacation time instead.

22. On or about August 20, 2020, Plaintiff returned to work, after his two-week quarantine, and was told by RUBIO, "you got saved Chilean" in a joking manner. Further, RUBIO told Plaintiff to "put more effort in" on his work because he took two weeks off due to COVID.

23. On or around December 20, 2020, Plaintiff provided RUBIO with a doctor's note that indicated his surgery would take place in January 2021. When Plaintiff requested a medical leave for his foot surgery, RUBIO replied, "Always trouble with you, Chilean."

24. On or around January 7, 2021, RUBIO told Plaintiff to go with him to a nearby horse hospital. There, RUBIO handed Plaintiff his last paycheck and was subsequently terminated. Plaintiff asked for the reason for his termination, but RUBIO did not provide any reason.

25. After terminating Plaintiff, RUBIO openly told other workers that he fired Plaintiff because he would need too much time off for his surgery and recovery.

## **FIRST CAUSE OF ACTION**
### **(FEHA Disability Discrimination)**
### **(Plaintiff Against All Defendants)**

26. Plaintiff incorporates all paragraphs above as though fully set forth herein.

27. Defendant is a business entity regularly employing at least the minimum number of employees upon which certain legal duties and obligations arise under various laws and statutes, including the FEHA. At all times herein mentioned in this complaint, Government Code §12940, Government Code §12926.1, and Title VII, were in full force and effect and were binding on the Defendants and the Defendants were subject to their terms.

28. Plaintiff FUENTES is, and at all times herein mentioned was, an "employee" who suffers from a "disability" as defined by Government Code §§12926, et seq. and §12940 et seq. and California Code of Regulations, Title 2, which limits one or more major life activities.

//

29. At all times herein mentioned, Plaintiff FUENTES was fully qualified and competent to perform duties of his position with a reasonable accommodation.

30. On or about August 16, 2016, Plaintiff FUENTES became employed by Defendant HFH, as a Helper.

31. In or about August 2018, RUBIO became Plaintiff's supervisor.

32. On or about July 2020, Plaintiff notified RUBIO that he would need foot surgery on both feet and would need three months off for each surgery. Plaintiff gave RUBIO his medical note that states that he required surgery on January 14, 2021. In response, RUBIO told Plaintiff, "Just a bunch of problems with you" and added, "for that time you're taking off, I'm not sure we will still have a job for you."

33. On or around August 6, 2020, Plaintiff tested positive for COVID. His doctor told him to take two weeks to quarantine and postpone his foot surgeries. Plaintiff promptly notified his supervisor, RUBIO, about him testing positive for COVID and gave RUBIO the doctor's note.

34. Plaintiff asked RUBIO if the two weeks of quarantine would be paid. RUBIO said he could not pay Plaintiff for those two weeks and suggested that Plaintiff use his accrued vacation time instead.

35. On or about August 20, 2020, Plaintiff returned to work, after his two-week quarantine, and was told by RUBIO, "you got saved Chilean" in a joking manner. Further, RUBIO told Plaintiff to "put more effort in" on his work because he took two weeks off due to COVID.

36. On or around December 20, 2020, Plaintiff provided RUBIO with a doctor's note that indicated his surgery would take place in January 2021. When Plaintiff requested a medical leave for his

foot surgery, RUBIO replied, "Always trouble with you, Chilean."

37. On or around January 7, 2021, RUBIO told Plaintiff to go with him to a nearby horse hospital. There, RUBIO handed Plaintiff his last paycheck and was subsequently terminated. Plaintiff asked for the reason for his termination, but RUBIO did not provide any reason.

38. After terminating Plaintiff, RUBIO openly told other workers that he fired Plaintiff because he would need too much time off for his surgery and recovery.

39. Defendants' adverse actions, including, but not limited to, terminating Plaintiff, were at least in part, in retaliation of Plaintiff's disability.

40. But for Plaintiff's disability, Defendants would not have taken adverse employment actions of terminating him.

41. As the legal result of Defendants' conduct, Plaintiff has suffered and continues to suffer substantial losses of wages, salary, benefits and additional amounts of money that Plaintiff would have received if Defendants had not discriminated against him as alleged above. As a result of such discrimination and consequent harm, Plaintiff has suffered such damages in an amount according to proof.

42. As the further legal result of Defendants' conduct, Plaintiff has been harmed in that he has suffered the intangible loss of such employment-related opportunities as experience and status in the positions previously held by him, all to his damage in an amount according to proof.

43. The above-cited conduct of Defendants was done with malice, fraud and oppression, and in reckless disregard of Plaintiff's rights under the FEHA. Defendants consciously, intentionally and in conscious disregard of his rights discriminated against Plaintiff because of his disability.

Plaintiff is thus entitled to recover punitive damages from Defendants in an amount according to proof.

44. As the result of Defendants' discriminatory acts as alleged herein, Plaintiff is entitled to reasonable attorney's fees and costs of suit as provided by FEHA, Gov. Code § 12965(b).

## SECOND CAUSE OF ACTION

### (Failure to Accommodate in Violation of FEHA)

### (Plaintiff Against All Defendants)

45. Plaintiff incorporates all paragraphs above as though fully set forth herein.

46. Plaintiff FUENTES, at all relevant times herein, suffered a FEHA protected disability.

47. On or about August 12, 2016, Plaintiff FUENTES became employed by Defendant HFH, as a Helper.

48. In or about August 2018, RUBIO became Plaintiff's supervisor.

49. On or about July 2020, Plaintiff notified RUBIO that he would need foot surgery on both feet and would need three months off for each surgery. Plaintiff gave RUBIO his medical note that states that he required surgery on January 14, 2021. In response, RUBIO told Plaintiff, "Just a bunch of problems with you" and added, "for that time you're taking off, I'm not sure we will still have a job for you."

50. On or around August 6, 2020, Plaintiff tested positive for COVID. His doctor told him to take two weeks to quarantine and postpone his foot surgeries. Plaintiff promptly notified his supervisor, RUBIO, about him testing positive for COVID and gave RUBIO the doctor's note.

51. Plaintiff asked RUBIO if the two weeks of quarantine would be paid. RUBIO said he could not pay Plaintiff for those two weeks and suggested that Plaintiff use his accrued vacation time instead.

52. On or about August 20, 2020, Plaintiff returned to work, after his two-week quarantine, and was told by RUBIO, "you got saved Chilean" in a joking manner. Further, RUBIO told Plaintiff to "put more effort in" on his work because he took two weeks off due to COVID.

53. On or around December 20, 2020, Plaintiff provided RUBIO with a doctor's note that indicated his surgery would take place in January 2021. When Plaintiff requested a medical leave for his foot surgery, RUBIO replied, "Always trouble with you, Chilean."

54. On or around January 7, 2021, RUBIO told Plaintiff to go with him to a nearby horse hospital. There, RUBIO handed Plaintiff his last paycheck and was subsequently terminated. Plaintiff asked for the reason for his termination, but RUBIO did not provide any reason.

55. After terminating Plaintiff, RUBIO openly told other workers that he fired Plaintiff because he would need too much time off for his surgery and recovery.

56. Defendant has an affirmative duty under FEHA to reasonably accommodate disabled workers. Such duty arises regardless of whether the employee requested any accommodation. FEHA entitles disabled employees to preferential consideration in reassignment of existing employees. See Jensen v. Wells Fargo Bank, 85 Cal. App.4th 245 (2000).

57. Instead of accommodating Plaintiff, Defendants did not allow Plaintiff time off for his surgery and recovery.

//

COMPLAINT AND DEMAND FOR JURY TRIAL

58.  At all times mentioned herein, Plaintiff FUENTES was willing and able to perform the duties and functions of his position or an alternate position if such reasonable accommodation had been made by Defendants, and each of them. At no time would the performance of the functions of the employment position, with a reasonable accommodation for Plaintiff's disabilities, have been a danger to Plaintiff's or any other person's health or safety, nor would it have created an undue hardship to the operations of Defendant's business.

59.  As a direct and legal result of Defendants' failure to accommodate Plaintiff FUENTES' disability, Plaintiff has suffered and continues to suffer general, consequential, and special damages, including but not limited to substantial losses in earnings, other employment benefits, physical injuries, physical sickness, as well as emotional distress, plus medical expenses, future medical expenses, and attorneys' fees, all to his damage in an amount according to proof.

60.  Said discrimination and/or refusal to accommodate/engage in interactive process was wrongful and justifies the imposition of punitive damages since refusing to accommodate Plaintiff FUENTES 'disability was against public policy. Defendants intentionally failed to accommodate Plaintiff, acted maliciously, fraudulently and oppressively, with the wrongful intention of injuring Plaintiff. Defendants acted with an evil purpose, in an intentional and deliberate manner, in violation of Plaintiff's civil rights, and/or with a conscious of Plaintiff's rights. Based upon the foregoing, Plaintiff is entitled to recover punitive damages in an amount according to proof from Defendants and each of them.

//
//
//
//
//
//

### THIRD CAUSE OF ACTION

**(Failure to Engage in the Interactive Process in Violation of FEHA)**

**(Plaintiff Against All Defendants)**

61. Plaintiff incorporates all paragraphs above as though fully set forth herein.

62. Plaintiff FUENTES, at all relevant times herein, suffered from a FEHA protected disability.

63. On or about August 12, 2016, Plaintiff FUENTES became employed by Defendant HFH, as a Helper.

64. On or about July 2020, Plaintiff notified RUBIO that he would need foot surgery on both feet and would need three months off for each surgery. Plaintiff gave RUBIO his medical note that states that he required surgery on January 14, 2021. In response, RUBIO told Plaintiff, "Just a bunch of problems with you" and added, "for that time you're taking off, I'm not sure we will still have a job for you."

65. On or around August 6, 2020, Plaintiff tested positive for COVID. His doctor told him to take two weeks to quarantine and postpone his foot surgeries. Plaintiff promptly notified his supervisor, RUBIO, about him testing positive for COVID and gave RUBIO the doctor's note.

66. Plaintiff asked RUBIO if the two weeks of quarantine would be paid. RUBIO said he could not pay Plaintiff for those two weeks and suggested that Plaintiff use his accrued vacation time instead.

67. On or about August 20, 2020, Plaintiff returned to work, after his two-week quarantine, and was told by RUBIO, "you got saved Chilean" in a joking manner. Further, RUBIO told Plaintiff to "put more effort in" on his work because he took two weeks off due to COVID.

68. On or around December 20, 2020, Plaintiff provided RUBIO with a doctor's note that indicated his surgery would take place in January 2021. When Plaintiff requested a medical leave for his foot surgery, RUBIO replied, "Always trouble with you, Chilean."

69. On or around January 7, 2021, RUBIO told Plaintiff to go with him to a nearby horse hospital. There, RUBIO handed Plaintiff his last paycheck and was subsequently terminated. Plaintiff asked for the reason for his termination, but RUBIO did not provide any reason.

70. After terminating Plaintiff, RUBIO openly told other workers that he fired Plaintiff because he would need too much time off for his surgery and recovery.

71. Instead of accommodating Plaintiff, Defendants did not allow Plaintiff time off for his surgery and recovery.

72. Plaintiff FUENTES did not cause the breakdown of the interactive process with Defendants. Rather, Defendants caused the breakdown in the interactive process with Plaintiff when they refused to provide Plaintiff accommodations for his disability.

73. Defendant did not engage in timely, good faith interactive process with Plaintiff to find an accommodation for Plaintiff's disability.

74. As a direct and legal result of Defendants' failure to engage in a good faith, timely interactive process, Plaintiff FUENTES has suffered and continues to suffer general, consequential, and special damages, including but not limited to substantial losses in earnings, other employment benefits, physical injuries, physical sickness, as well as emotional distress, plus medical expenses, future medical expenses, and attorneys' fees, all to his damage in an amount according to proof.

//

## FOURTH CAUSE OF ACTION

### (Discrimination on the Basis of National Origin)

### (Plaintiff Against All Defendants)

75. Plaintiff incorporates all paragraphs above as though fully set forth herein.

76. At all times herein mentioned in this complaint, Government Code section 12940 et seq., and California Constitution article I, section 8 were in full force and effect and was binding on the Defendants and the Defendants were subject to their terms, and therefore Defendants were required to refrain from violations of public policy, including discrimination based on national origin in violation of the FEHA.

77. At all times herein mentioned, Plaintiff was a member of a protected class, in that he is Chilean.

78. Defendant HFH was a business entity regularly employing at least the minimum number of employees upon which certain legal duties and obligations arise under various laws and statutes, including FEHA.

79. At all times herein mentioned, Plaintiff was fully qualified and competent to perform his respective duties. Nevertheless, Defendants engaged in a continuing course of national origin discrimination against Plaintiff.

80. Specifically, Plaintiff was reprimanded more often and severely than other workers of different nationalities. When other workers made the same mistakes as Plaintiff, RUBIO, who is of Mexican nationality, would not discipline them. However, when Plaintiff did the same, Plaintiff would be insulted and told, "How can you be so stupid, Chilean" and "always problems with the Chilean" in front of other workers.

//

---

COMPLAINT AND DEMAND FOR JURY TRIAL

14

81. On or about August 20, 2020, Plaintiff returned to work, after his two-week quarantine, and was told by RUBIO, "you got saved Chilean" in a joking manner. Further, RUBIO told Plaintiff to "put more effort in" on his work because he took two weeks off due to COVID.

82. On or around December 20, 2020, Plaintiff provided RUBIO with a doctor's note that indicated his surgery would take place in January 2021. When Plaintiff requested a medical leave for his foot surgery, RUBIO replied, "Always trouble with you, Chilean."

83. On or around January 7, 2021, RUBIO told Plaintiff to go with him to a nearby horse hospital. There, RUBIO handed Plaintiff his last paycheck and was subsequently terminated. Plaintiff asked for the reason for his termination, but RUBIO did not provide any reason.

84. As a direct and legal result of Defendants' discrimination actions against Plaintiff for his protected status herein referenced, Plaintiff has suffered and continues to suffer general, consequential and special damages including but not limited to substantial losses in earnings, other employment benefits, physical injuries, physical sickness, as well as emotional distress, plus medical expenses, future medical expenses, and attorneys' fees, all to his damage in an amount according to proof.

**FIFTH CAUSE OF ACTION**

**(Harassment on the Basis of National Origin)**

**(Plaintiff Against All Defendants)**

85. The conduct of HFH created a hostile work environment for Plaintiff, making the conditions of his employment intolerable in direct contravention of various statutes and state law decisions, including but not limited to California Government Code §12940. HFH subjected Plaintiff to a hostile work environment due to, including but not limited to, harassment based on race and/or national original.

86. Throughout Plaintiff's employment with Defendant, he was reprimanded more often and severely than other workers because of his nationality. When other workers made the same mistakes as Plaintiff, RUBIO, who is of Mexican nationality, would not discipline them. However, when Plaintiff did the same, Plaintiff would be insulted and told, "How can you be so stupid, Chilean" and "always problems with the Chilean" in front of other workers. Plaintiff is of Chilean nationality.

87. On or about August 20, 2020, Plaintiff returned to work, after his two-week quarantine, and was told by RUBIO, "you got saved Chilean" in a joking manner. Further, RUBIO told Plaintiff to "put more effort in" on his work because he took two weeks off due to COVID.

88. On or around December 20, 2020, Plaintiff provided RUBIO with a doctor's note that indicated his surgery would take place in January 2021. When Plaintiff requested a medical leave for his foot surgery, RUBIO replied, "Always trouble with you, Chilean."

89. On or around January 7, 2021, RUBIO told Plaintiff to go with him to a nearby horse hospital. There, RUBIO handed Plaintiff his last paycheck and was subsequently terminated. Plaintiff asked for the reason for his termination, but RUBIO did not provide any reason.

90. Such harassment was sufficiently severe or pervasive that it altered the conditions of Plaintiff's employment, creating a hostile, abusive work environment and thereby endangering Plaintiff's physical health and making his working conditions intolerable. Said harassment was sufficiently extreme to amount to a change in the terms and conditions of Plaintiff's employment.

91. As a direct and legal result of Defendants' conduct, and each of them, Plaintiff has suffered and continues to suffer general, consequential, and special damages, including but not limited to substantial losses in earnings, other employment benefits, physical injuries, physical

sickness, as well as emotional distress, plus medical expenses, future medical expenses, and attorneys' fees, all to his damage in the amount according to proof.

## SIXTH CAUSE OF ACTION

### (Hostile Work Environment)

### (Plaintiff Against All Defendants)

92. Plaintiff incorporates the foregoing paragraphs as if fully restated herein.

93. Defendant RUBIO's conduct created a hostile work environment for Plaintiff, making the conditions of his employment intolerable in direct contravention of various statutes and state law decisions, including but not limited to California Government Code §12940(h) and (j). Plaintiff was subjected to a hostile work environment, including but not limited to, inappropriate disability and national origin harassment. The harassment by Defendant RUBIO was based on Plaintiff's disability and national origin. Such harassment was so severe and pervasive that it altered the conditions of Plaintiff's employment, creating a hostile, abusive work environment and thereby endangering Plaintiff's physical health and making his working conditions intolerable. Said harassment was sufficiently extreme to amount to a change in the terms and conditions of Plaintiff's employment.

94. On or about August 12, 2016, Plaintiff FUENTES became employed by Defendant HFH, as a Helper.

95. Throughout Plaintiff's employment with Defendant, he was reprimanded more often and severely than other workers because of his nationality. When other workers made the same mistakes as Plaintiff, RUBIO, who is of Mexican nationality, would not discipline them. However, when Plaintiff did the same, Plaintiff would be insulted and told, "How can you be so stupid, Chilean" and "always problems with the Chilean" in front of other workers. Plaintiff

1   is of Chilean nationality.

2

3   96.   On or about July 2020, Plaintiff notified RUBIO that he would need foot surgery on both feet

4         and would need three months off for each surgery. Plaintiff gave RUBIO his medical note that

5         states that he required surgery on January 14, 2021. In response, RUBIO told Plaintiff, "Just a

6         bunch of problems with you" and added, "for that time you're taking off, I'm not sure we will

7         still have a job for you."

8

9   97.   On or around August 6, 2020, Plaintiff tested positive for COVID. His doctor told him to take

10        two weeks to quarantine and postpone his foot surgeries. Plaintiff promptly notified his

11        supervisor, RUBIO, about him testing positive for COVID and gave RUBIO the doctor's note.

12

13  98.   Plaintiff asked RUBIO if the two weeks of quarantine would be paid. RUBIO said he could

14        not pay Plaintiff for those two weeks and suggested that Plaintiff use his accrued vacation time

15        instead.

16

17  99.   On or about August 20, 2021, Plaintiff returned to work, after his two-week quarantine, and

18        was told by RUBIO, "you got saved Chilean" in a joking manner. Further, RUBIO told

19        Plaintiff to "put more effort in" on his work because he took two weeks off due to COVID.

20

21  100.  On or around December 20, 2020, Plaintiff provided RUBIO with a doctor's note that indicated

22        his surgery would take place in January 2021. When Plaintiff requested a medical leave for his

23        foot surgery, RUBIO replied, "Always trouble with you, Chilean."

24

25  101.  On or around January 7, 2021, RUBIO told Plaintiff to go with him to a nearby horse hospital.

26        There, RUBIO handed Plaintiff his last paycheck and was subsequently terminated. Plaintiff

27        asked for the reason for his termination, but RUBIO did not provide any reason.

28  //

102. After terminating Plaintiff, RUBIO openly told other workers that he fired Plaintiff because he would need too much time off for his surgery and recovery.

103. Such harassment was so severe and pervasive that it altered the conditions of Plaintiff's employment, creating a hostile, abusive work environment and thereby endangering Plaintiff's physical health and making his working conditions intolerable. Said harassment was sufficiently extreme to amount to a change in the terms and conditions of Plaintiff's employment.

104. As a direct and legal result of Defendants' conduct, and each of them, Plaintiff has suffered and continues to suffer general, consequential, and special damages, including but not limited to substantial losses in earnings, other employment benefits, as well as emotional distress, future medical expenses, and attorneys' fees, all to their damage in the amount according to proof.

105. Said actions by Defendants justify the imposition of punitive damages in that the actions were against public policy. Defendants committed the acts alleged herein maliciously, fraudulently and oppressively, with the wrongful intention of injuring Plaintiff, from an improper and evil motives amounting to malice in conscious disregard of Plaintiff's rights.

## SEVENTH CAUSE OF ACTION
### (FEHA Retaliation)
### (Plaintiff Against All Defendants)

106.    Plaintiff incorporates all paragraphs above as though fully set forth herein.

107. At all times mentioned in this complaint, Defendants regularly employed five or more persons, bringing Defendants within the provisions of the FEHA, Gov. Code, § 12926(d).

108. At all times herein mentioned in this complaint, California Government Code Section 12940 et seq. was in full force and effect and binding on the Defendant and the Defendant was subject to its terms. Defendant terminated Plaintiff, for reasons and in a manner contrary to the Fair Employment and Housing Act ("FEHA"), on a pre-textual basis, because of his disability, as herein alleged.

109. On or about August 16, 2016, Plaintiff FUENTES became employed by Defendant HFH, as a Helper.

110. In or about August 2018, RUBIO became Plaintiff's supervisor.

111. On or about July 2020, Plaintiff notified RUBIO that he would need foot surgery on both feet and would need three months off for each surgery. Plaintiff gave RUBIO his medical note that states that he required surgery on January 14, 2021. In response, RUBIO told Plaintiff, "Just a bunch of problems with you" and added, "for that time you're taking off, I'm not sure we will still have a job for you."

112. On or around August 6, 2020, Plaintiff tested positive for COVID. His doctor told him to take two weeks to quarantine and postpone his foot surgeries. Plaintiff promptly notified his supervisor, RUBIO, about him testing positive for COVID and gave RUBIO the doctor's note.

113. Plaintiff asked RUBIO if the two weeks of quarantine would be paid. RUBIO said he could not pay Plaintiff for those two weeks and suggested that Plaintiff use his accrued vacation time instead.

114. On or about August 20, 2020, Plaintiff returned to work, after his two-week quarantine, and was told by RUBIO, "you got saved Chilean" in a joking manner. Further, RUBIO told Plaintiff to "put more effort in" on his work because he took two weeks off due to COVID.

115. On or around December 20, 2020, Plaintiff provided RUBIO with a doctor's note that indicated his surgery would take place in January 2021. When Plaintiff requested a medical leave for his foot surgery, RUBIO replied, "Always trouble with you, Chilean."

116. On or around January 7, 2021, RUBIO told Plaintiff to go with him to a nearby horse hospital. There, RUBIO handed Plaintiff his last paycheck and was subsequently terminated. Plaintiff asked for the reason for his termination, but RUBIO did not provide any reason.

117. After terminating Plaintiff, RUBIO openly told other workers that he fired Plaintiff because he would need too much time off for his surgery and recovery.

118. In retaliation, Defendants subjected Plaintiff to an adverse employment action by terminating Plaintiff. Said retaliation was in violation of public policy because the sole and actual reason for the adverse employment action was that Plaintiff engaged in protected activity under FEHA.

119. Plaintiff is informed and believes that his disability was a factor in the decision to terminate his employment.

120. Defendant's conduct above described is in violation of various statutes and state law decisions, including California Government Code Section 12940 et seq., due to Plaintiff's protected classification.

121. As a direct and legal result of Defendant's discrimination and retaliatory actions against Plaintiff for his complaints and objections herein referenced, Plaintiff has suffered and continues to suffer general, consequential and special damages including but not limited to substantial losses in earnings, other employment benefits, physical injuries, physical sickness, as well as emotional distress, plus medical expenses, future medical expenses, and attorneys'

1   fees, all to his damage in an amount according to proof.

2

3                              **EIGHTH CAUSE OF ACTION**

4          **(Violation of the Families First Coronavirus Response Act (FFCRA))**

5                          **(Plaintiff Against All Defendants)**

6

7   122.   Plaintiff incorporates all paragraphs above as though fully set forth herein.

8

9   123.   Effective April 1, 2020, the FFCRA provides for up to 80 hours of paid sick time to eligible

10          full-time employees who are unable to work or telework due to the effects of COVID-19

11          through the Emergency Paid Sick Leave Act. (29 U.S.C.A. §2601).

12

13  124.   The FFCRA also provides for an additional 10 weeks of family and medical leave to eligible

14          employees who are unable to work or telework due to the effects of COVID-19 through the

15          Emergency Family and Medical Leave Expansion Act.

16

17  125.   The FFCRA expressly identifies enforcement of any and all penalties arising from violations

18          of the Emergency Paid Sick Leave Act and the Emergency Family and Medical Leave

19          Expansion Act shall be governed by relevant sections of the FLSA, as set forth in more detail

20          below.

21

22  126.   Plaintiff is informed and believes, and alleges thereon that at all relevant times herein,

23          Defendants knew that Plaintiff was an eligible employee within the meaning of the FLSA and

24          FFCRA.

25

26  127.   On or about August 12, 2016, Plaintiff FUENTES became employed by Defendant HFH, as a

27          Helper.

28  //

─────────────────────────────────────────────
COMPLAINT AND DEMAND FOR JURY TRIAL

128. On or around August 6, 2020, Plaintiff tested positive for COVID. His doctor told him to take two weeks to quarantine and postpone his foot surgeries. Plaintiff promptly notified his supervisor, RUBIO, about him testing positive for COVID and gave RUBIO the doctor's note.

129. Plaintiff asked RUBIO if the two weeks of quarantine would be paid. RUBIO said he could not pay Plaintiff for those two weeks and suggested that Plaintiff use his accrued vacation time instead.

130. On or about August 20, 2020, Plaintiff returned to work, after his two-week quarantine, and was told by RUBIO, "you got saved Chilean" in a joking manner. Further, RUBIO told Plaintiff to "put more effort in" on his work because he took two weeks off due to COVID.

131. On or around January 7, 2021, RUBIO told Plaintiff to go with him to a nearby horse hospital. There, RUBIO handed Plaintiff his last paycheck and was subsequently terminated. Plaintiff asked for the reason for his termination, but RUBIO did not provide any reason.

132. Defendants were required to grant Plaintiff's need for leave and to pay Plaintiff at two thirds of his regular rate of pay, up to $200 per day and $12,000 in the aggregate (over a 12-week period).

133. The FFCRA makes it unlawful for an employer to discharge, discipline, or in any other manner discriminate against an employee who takes leave in accordance with the FFCRA.

134. Defendants violated the FFCRA and the FSLA by, inter alia, (1) willfully terminating Plaintiff in retaliation for exercising his right to leave under the FFCRA and requesting accommodation under the same due to COVID-19 related concerns.

//

//

135. An employer who willfully violates section 5104 of the FFCRA is considered to be in violation of section 15(a)(3) of the FLSA, and is subject to the penalties described in sections 16 and 17 of the same (29 U.S.C. 216, 217). Penalties under section 16 and 17 of the FLSA include, but are not limited to, lost wages, an equivalent amount of liquidated damages, and attorney's fees and costs.

136. As an actual and proximate result of Defendants' conduct, and each of them, Plaintiff has suffered and continues to suffer damages in the form of lost wages, earnings, and other economic benefits, the exact amount of which will be proven at trial. Thus, Plaintiff is entitled to "such legal or equitable relief as may be appropriate to effectuate the purposes of section 215(a)(3) including without limitation reinstatement, promotion, and the payment of wages lost and an additional equal amount as liquidated damages." (29 U.S.C.A §216).

137. As a direct and legal result of Defendants' conduct, and each of them, Plaintiff has suffered and continues to suffer general, consequential, and special damages, including but not limited to substantial losses in earnings, other employment benefits, physical injuries, physical sickness, as well as emotional distress, plus medical expenses, future medical expenses, and attorneys' fees (including expert costs), all to his damage in the amount according to proof.

138. The above-mentioned actions of the Defendants and their agents, and each of them, were done willfully. Plaintiff is entitled to reasonable attorneys' fees.

//
//
//
//
//
//
//

## NINTH CAUSE OF ACTION

**(Violation of California Labor Code §§ 226.7 And 512)**

**(Failure to Provide Meal and Rest Breaks)**

**(Plaintiff Against All Defendants)**

139. Plaintiff incorporates all paragraphs above as though fully set forth herein.

140. Plaintiff is informed and believes, and thereon allege that California Labor Code §§ 226.7 and 512 were in full force and effect and binding on Defendants during all times mentioned in this Complaint. Said section requires employers to comply with all Industrial Welfare Commission Wage Orders governing meal and rest periods.

141. Plaintiff is informed and believe, and thereon allege, that the IWC Wage Orders were in full force and effect and govern when employers, including Defendants, must give employee breaks for meal and rest periods. The Wage Orders state in pertinent part that employers must provide at least thirty minutes of meal periods for every five hours of work and another thirty-minute period if the work period is ten hours or more. Furthermore, the IWC Wage Orders state in pertinent part that employees must be given at least a ten-minute rest period for every four (4) hours or major fraction thereof.

142. During the entirety of his employment with Defendants, Plaintiff was often denied the ability to take their meal breaks and rest breaks. In these instances, Plaintiff was not paid a meal break or rest break premium, in violation of IWC Wage Orders and California Labor Code §§ 226.7 and 512.

143. Specifically, Between August 2018 and January 2021, Plaintiff was habitually denied his legally mandated, uninterrupted meal periods. During the entirety of Plaintiff's employment with Defendant, Plaintiff's meal break was interrupted or not provided at all. Specifically,

1    RUBIO would often interrupt Plaintiff's lunch to make him work. When Plaintiff would inform

2    RUBIO that he was unable to help because he was on his lunch break, RUBIO would reply,

3    "You can eat later" and force Plaintiff to work even when there were other employees available

4    on duty.

5

6    144. Throughout Plaintiff's employment with Defendant, Plaintiff was unable to take a meal break

7    within his fifth hour of work. Plaintiff and other employees complained to RUBIO and would

8    say, "Please let us go to lunch, we are hungry." RUBIO would deny their request and reply,

9    "Well I'm not hungry yet."

10

11   145. Between August 2018 and January 2021, Plaintiff was denied the right to take a ten-minute

12   rest break every day. RUBIO would deny Plaintiff's request for rest breaks and would say,

13   "They pay you too much for the little that you do."

14

15   146. Plaintiff is informed and believe, and thereon allege, that The Wage Orders and the California

16   Labor Code mandate that Defendants must pay Plaintiff one hour of pay at Plaintiff's regular

17   rate of pay for every missed meal and rest period. Plaintiff is thereby entitled to these penalties

18   in an amount to be proven at trial, and also prays for all other remedies available under the

19   law.

20

21   **TENTH CAUSE OF ACTION**

22   **(Violation of California Labor Code §§ 510, 1194 & 1198)**

23   **(Unpaid Overtime)**

24   **(Plaintiff Against All Defendants)**

25

26   147. Plaintiff incorporates all paragraphs above as though fully set forth herein.

27   //

28   //

148. California Labor Code § 510 provides that employees in California shall not be employed more than eight hours in any workday or 40 hours in a workweek unless they receive additional compensation beyond their regular wages in amounts specified by law.

149. California Labor Code §§ 1194 and 1198 provide that employees in California shall not be employed more than eight hours in any workday unless they receive additional compensation beyond their regular wages in amounts specified by law. Additionally, California Labor Code § 1198 states that the employment of an employee for longer hours than those fixed by the Industrial Welfare Commission is unlawful. The governing Wage Order of the Industrial Welfare Commission requires, among other things, payment of a premium wage rate for all hours worked in excess of 8 hours per day or 40 hours per week.

150. At all times relevant hereto, Defendants failed to pay Plaintiff overtime compensation for the hours he worked in excess of the maximum hours permissible by law as required by California Labor Code § 510 and 1198.

151. RUBIO would make Plaintiff work more than eight (8) hours a day, without paying Plaintiff an overtime rate for his overtime hours worked. RUBIO would tell Plaintiff, "If you work overtime, you can take more time off later." However, when Plaintiff asked for days off, RUBIO would make excuses, saying "it's too busy."

152. Plaintiff complained to RUBIO asking why he was not paid overtime and RUBIO responded, "you are getting paid on salary, you do not get overtime." However, Plaintiff was not a salaried employee.

153. During Plaintiff's employment, Defendants failed to compensate Plaintiff for all overtime hours worked in excess of eight hours per day and/or 40 hours per week as required by Labor Code §§ 510 and 1194. Specifically, Plaintiff was either not paid for hours worked in excess

of 8 hours in a day, or Plaintiff was not paid the overtime rate for applicable overtime hours worked. This failure was due to Defendants improperly classifying Plaintiff as an exempt employee.

154. At all times relevant hereto, Defendants failed to pay Plaintiff overtime compensation for the hours he worked in excess of the maximum hours permissible by law as required by California Labor Code § 510 and 1198. Plaintiff was required to work overtime hours without receiving overtime pay.

155. By virtue of Defendants' unlawful failure to pay additional, premium rate compensation to Plaintiff for overtime hours worked, Plaintiff suffered, and will continue to suffer, damages in amounts which are presently unknown to him, and which will be ascertained according to proof at trial.

156. Plaintiff requests recovery of overtime compensation according to proof, interest, attorney's fees and costs pursuant to California Labor Code § 1194(a), as well as the assessment of any statutory penalties against Defendants, in a sum as provided by the California Labor Code and/or other statutes. Further Plaintiff is entitled to seek and recover reasonable attorneys' fees and costs pursuant to California Labor Code § 1194.

## ELEVENTH CAUSE OF ACTION

### (Violation of California Labor Code § 226(A))

### (Inaccurate Wage Statements)

### (Plaintiff Against All Defendants)

157. Plaintiff incorporates all paragraphs above as though fully set forth herein.

//

//

158. At all material times set forth herein, California Labor Code § 226(a) provides that every employer shall furnish each of his or her employees an accurate itemized wage statement in writing showing nine pieces of information, including: (1) gross wages earned, (2) total hours worked by the employee, (3) the number of piece-rate units earned and any applicable piece rate if the employee is paid on a piece-rate basis, (4) all deductions, provided that all deductions made on written orders of the employee may be aggregated and shown as one item, (5) net wages earned, (6) the inclusive dates of the period for which the employee is paid, (7) the name of the employee and the last four digits of his or her social security number or an employee identification number other than a social security number, (8) the name and address of the legal entity that is the employer, and (9) all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee.

159. As a result of Defendants' violation of California Labor Code section 226(a), Plaintiff has suffered an injury and damage to his statutorily protected rights.

160. Specifically, Plaintiff was injured by Defendants' intentional violation of California Labor Code 226(a) because she was denied both his legal right to receive, and his protected interest in receiving, accurate, itemized wage statements under California Labor Code section 226(a).

161. Plaintiff was also injured as a result of having to bring this action to attempt to obtain correct wage information following Defendants' refusal to comply with many of the mandates of California's Labor Code and related laws and regulations.

162. Under California Labor Code section 226(e), Plaintiff is entitled to recover from Defendants the greater of his actual damages caused by Defendants' failure to comply with California Labor Code section 226(a), or an aggregate penalty not exceeding four thousand dollars ($4,000).

//

COMPLAINT AND DEMAND FOR JURY TRIAL

### TWELFTH CAUSE OF ACTION

**(Violation of California Labor Code § 200-204)**

**(Waiting Time Penalties)**

**(Plaintiff Against All Defendants)**

163. Plaintiff incorporates by reference and realleges each of the foregoing paragraphs.

164. At all times herein set forth, California Labor Code §§ 200 through 204 provide that if an employer discharges an employee, the wages earned and unpaid at the time of discharge are due and payable immediately, and that if an employee voluntarily leaves his or her employment, his or her wages shall become due and payable not later than 72 hours thereafter, unless the employee has given 72 hours previous notice of his or her intention to quit, in which case the employee is entitled to his or her wages at the time of quitting.

165. Plaintiff's paychecks did not include all wages owed to Plaintiff as Defendants failed to pay for meal and rest break premiums as well as overtime pay that Plaintiff was entitled to.

166. Defendant's failure to pay Plaintiff's wages earned and unpaid at the time of discharge is in violation of California Labor Code §§ 200 through 204.

167. California Labor Code § 203 provides that if an employer willfully fails to pay wages owed, in accordance with sections 201 and 202, then the wages of the employee shall continue as a penalty from the due date, and at the same rate until paid or until an action is commenced; but the wages shall not continue for more than 30 days.

168. Plaintiff is entitled to recover from Defendants additionally accruing wages for each day not paid, at the regular daily rate of pay, up to 30 days maximum pursuant to California Labor Code § 203.

## THIRTEENTH CAUSE OF ACTION

### Violation of California Business & Professions Code §§ 17200, et seq.

### (Plaintiff Against All Defendants)

169. Plaintiff incorporates by reference and realleges each of the foregoing paragraphs.

170. Defendants' conduct, as alleged herein, has been, and continues to be, unfair, unlawful, and harmful to Plaintiff, other employees, and to the general public. Plaintiff seeks to enforce important rights affecting the public interest within the meaning of Code of Civil Procedure section 1021.5.

171. Defendants' activities, as alleged herein, are violations of California law, and constitute unlawful business acts and practices in violation of California Business & Professions Code sections 17200, et seq.

172. A violation of California Business & Professions Code § 17200, et seq. may be predicated on the violation of any state or federal law. All acts described herein as violations of, among other things, California Labor Code and Industrial Welfare Commission Wage Orders, are unlawful and in violation of public policy; and in addition are immoral, unethical, oppressive, fraudulent and unscrupulous, and thereby constitute unfair, unlawful and/or fraudulent business practices in violation of California Business and Professions Code § 17200, et seq.

173. Defendants' denial of meal and rest breaks violated Labor Code §§ 226.7 & 512, as alleged in detail above, constitutes unlawful and/or unfair activity prohibited by Business and Professions Code § 17200, et seq.

174. Defendants' failure to compensate Plaintiff for overtime hours worked, as alleged in detail above, constitutes unlawful and/or unfair activity prohibited by Business and Professions Code

§ 17200, et seq.

175. Defendants' failure to provide accurate itemized wage statements in accordance with Labor Code § 226, as alleged in detail above, constitutes unlawful and/or unfair activity prohibited by Business and Professions Code § 17200, et seq.

176. Defendants' violation of the FFCRA, as alleged in detail above, constitutes unlawful and/or unfair activity prohibited by Business and Professions Code § 17200, et seq.

177. Pursuant to California Business & Professions Code § 17200, et seq., Plaintiff is entitled to restitution, including but not limited to, of wages withheld and retained by Defendants during a period from four years prior to the filing of this complaint and for employer payroll taxes; a permanent injunction requiring Defendants to pay all outstanding wages due to Plaintiff; an award of attorneys' fees pursuant to California Code of Civil Procedure § 1021.5 and other applicable laws; and an award of costs.

## **PRAYER**

1. For general unpaid wages at overtime wage rates and such general and special damages as may be appropriate;

2. For damages according to proof, including loss of earnings, deferred compensation, and other employment benefits;

3. For general damages, according to proof;

4. For other special damages according to proof, including but not limited to reasonable medical expenses;

5.  For prejudgment interest on lost wages and benefits;

6.  For statutory penalties pursuit to California Labor Code §§ 226(e);

7.  For restitution of unpaid wages to Plaintiff and prejudgment interest from the day such amount was due and payable;

8.  For injunctive relief pursuit to California Business & Professions Code §§ 17200, et seq.;

9.  For interest on the amount of unpaid wages, and other employee benefits at the prevailing legal rate;

10. For punitive damages; and

11. For each such other and further relief as the court deems just and proper.


Dated: November 5, 2021                    WEST COAST EMPLOYMENT LAWYERS, APLC


                                      By: _____
                                           Ronald L. Zambrano, Esq.
                                           Crystal F. Mohsin, Esq.
                                           Attorneys for Plaintiff,
                                           JERRY FUENTES

---

1

## DEMAND FOR JURY TRIAL

2

3        Plaintiff hereby demands trial by jury.

4

5

6   Dated:  November 5, 2021              WEST COAST EMPLOYMENT LAWYERS, APLC

7

8                                   By: _____

9                                        Ronald L. Zambrano, Esq.
                                         Crystal F. Mohsin, Esq.
10                                       Attorneys for Plaintiff,
                                         JERRY FUENTES
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT B

©COPY

SUM-100

# SUMMONS
## *(CITACION JUDICIAL)*

**FOR COURT USE ONLY**
*(SOLO PARA USO DE LA CORTE)*

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

HUMANITY FOR HORSES, a California Non-Profit Corporation;
CLAUDIO RUBIO, an Individual, and DOES 1 through 10, inclusive,

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

JERRY FUENTES, an Individual,

---

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

---

The name and address of the court is:
*(El nombre y dirección de la corte es):* Superior Court of California, County of
Siskiyou, Civil Division, 311 4th Street, P.O. Box 1026, Yreka,
California 96097

CASE NUMBER:
*(Número del Caso):*
CVCV 21-1194

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Ronald L. Zambrano, 1147 South Hope Street, Los Angeles, California 90015, (213) 927-3700

| DATE: NOV – 5 2021 | Clerk, by | , Deputy |
|---|---|---|
| *(Fecha)* DENEE McGANNA CRANE | *(Secretario)* T. OBRION | *(Adjunto)* |

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served
1. [X] as an individual defendant.
2. [ ] as the person sued under the fictitious name of *(specify):*

3. [ ] on behalf of *(specify):*

   under: [ ] CCP 416.10 (corporation)       [ ] CCP 416.60 (minor)
   [ ] CCP 416.20 (defunct corporation)       [ ] CCP 416.70 (conservatee)
   [ ] CCP 416.40 (association or partnership) [ ] CCP 416.90 (authorized person)

   [ ] other *(specify):*
4. [ ] by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov

File by Fax

COPY

1    Neama Rahmani (State Bar No. 223819)
        *efilings@westcoasttriallawyers.com*
2    Ronald L. Zambrano (State Bar No. 255613)
        *ron@westcoasttriallawyers.com*
3    Crystal F. Mohsin (State Bar No. 333299)
        *crystal@westcoasttriallawyers.com*
4    WEST COAST EMPLOYMENT LAWYERS, APLC
5    1147 South Hope Street
     Los Angeles, California 90015
6    Telephone: (213) 927-3700
     Facsimile: (213) 927-3701
7

SUPERIOR COURT OF CALIFORNIA
COUNTY OF SISKIYOU

NOV -5 2021

Endorsed - T. O'Brien

BY: _____
        DEPUTY CLERK

8

9    Attorneys for Plaintiff,
     JERRY FUENTES

10

11              SUPERIOR COURT OF THE STATE OF CALIFORNIA

12                     FOR THE COUNTY OF SISKIYOU

13

14   JERRY FUENTES, an Individual,          Case No.: CVCV 21-1194

15              Plaintiff;                  **COMPLAINT FOR DAMAGES**
                                            1)  FEHA DISABILITY DISCRIMINATION;
16              v.                          2)  FAILURE TO ACCOMMODATE IN VIOLATION OF
                                                FEHA;
17   HUMANITY FOR HORSES, a California      3)  FAILURE TO ENGAGE IN THE INTERACTIVE
     Non-Profit Corporation; CLAUDIO            PROCESS IN VIOLATION OF FEHA;
18   RUBIO, an Individual, and DOES 1       4)  DISCRIMINATION ON THE BASIS OF NATIONAL
     through 10, inclusive,                     ORIGIN;
19                                          5)  HARASSMENT ON THE BASIS OF NATIONAL
                                                ORIGIN;
20              Defendants.                 6)  HOSTILE WORK ENVIRONMENT;
                                            7)  FEHA RETALIATION;
21                                          8)  VIOLATION OF THE FAMILIES FIRST CORONAVIRUS
                                                RESPONSE ACT (FFCRA);
22                                          9)  VIOLATION OF LABOR CODE §§226.7 & 512
                                                (FAILURE TO PROVIDE MEAL AND REST BREAKS);
23                                          10) VIOLATION OF LABOR CODE §§ 510, 1194, & 1198
                                                (UNPAID OVERTIME);
24                                          11) VIOLATION OF LABOR CODE §§ 226(A)
                                                (INACCURATE WAGE STATEMENTS);
25                                          12) VIOLATION OF LABOR CODE §§ 200-204 (WAITING
                                                TIME PENALTIES); AND
26                                          13) VIOLATION OF CALIFORNIA BUSINESS &
                                                PROFESSIONS CODE §§17200, ET SEQ.
27

28                                          **DEMAND FOR JURY TRIAL**

COMPLAINT AND DEMAND FOR JURY TRIAL

1

File By Fax

COMES NOW the Plaintiff, JERRY FUENTES (who hereinafter shall be referred to as the "Plaintiff" or as "FUENTES"), who hereby respectfully alleges, avers, and complains, as follows:

## INTRODUCTION

1. This is an action brought by the Plaintiff, JERRY FUENTES, pursuant to California statutory, decisional, and regulatory laws. Plaintiff was an employee of Defendant, HUMANITY FOR HORSES, (hereinafter "Defendant" or "HFH"), at all times herein mentioned.

2. Plaintiff alleges that California statutory, decisional, and regulatory laws prohibit the conduct by Defendants herein alleged, and therefore Plaintiff has an entitlement to monetary relief on the basis that Defendants violated such statutes, decisional law, and regulations.

## JURISDICTION AND VENUE

3. Jurisdiction is proper in this court by virtue of the California statutes, decisional law, and regulations, and the local rules under the Siskiyou County Superior Court Rules.

4. Venue in this Court is proper in that Defendant HFH has a principal business address located in the City of Gazelle, County of Siskiyou, State of California.

## PARTIES

5. At all times herein mentioned, Plaintiff JERRY FUENTES, is and has been a resident of, Siskiyou County, State of California.

6. Defendant HFH is and at all times herein mentioned has been a California Non-Profit Corporation registered with the State of California, with the capacity to sue and to be sued, and

doing business, with a principal place of business located at 6523 Scarface Road, Gazelle, California 96034.

7.  Defendant CLAUDIO RUBIO (hereinafter referred to as "RUBIO") was and at all times herein mentioned an employee of Defendant HFH, and at all times herein mentioned was and, upon information and belief, still is a resident of the County of Siskiyou, State of California.

8.  Pursuant to HFH's Statement of Information filed with the California Secretary of State, Defendant DYLAN COLEMAN ("D. COLEMAN") is the Chief Executive Officer, KELLY COLEMAN ("K. COLEMAN") is the Secretary and RICK JORDAN ("JORDAN") is the Chief Financial Officer. Defendants D. COLEMAN, K. COLEMAN and JORDAN are therefore liable for the claims alleged herein pursuant to Labor Code §558.1 because each individual was and is an "other person" acting on behalf of HFH, who violates, or causes to be violated, certain Labor Code sections herein.

9.  Plaintiff is informed and believes and thereon alleges that each of the Defendants herein were at all times the agent, employee, or representative of each remaining Defendant and were at all times herein acting within and outside the scope and purpose of said agency and employment. Plaintiff further alleges that as to each Defendant, whether named, or referred to as a fictitious name, said Defendants supervised, ratified, controlled, acquiesced in, adopted, directed, substantially participated in, and/or approved the acts, errors, or omissions, of each remaining Defendant.

10. The true names and capacities of the Defendants named herein as DOES 1 through 10, inclusive, whether individual, corporate, partnership, association, or otherwise, are unknown to Plaintiff who therefore sues these Defendants by such fictitious names. Plaintiff will request leave of court to amend this Complaint to allege their true names and capacities at such time as they are ascertained.

**FACTUAL ALLEGATIONS**

11. On or about August 16, 2016, Plaintiff FUENTES became employed by Defendant HFH, as a Helper.

12. In or about August 2018, RUBIO became Plaintiff's supervisor.

13. Between August 2018 and January 2021, Plaintiff was habitually denied his legally mandated, uninterrupted meal periods. During the entirety of Plaintiff's employment with Defendant, Plaintiff's meal break was interrupted or not provided at all. Specifically, RUBIO would often interrupt Plaintiff's lunch to make him work. When Plaintiff would inform RUBIO that he was unable to help because he was on his lunch break, RUBIO would reply, "You can eat later" and force Plaintiff to work even when there were other employees available on duty.

14. Throughout Plaintiff's employment with Defendant, Plaintiff was unable to take a meal break within his fifth hour of work. Plaintiff and other employees complained to RUBIO and would say, "Please let us go to lunch, we are hungry." RUBIO would deny their request and reply, "Well I'm not hungry yet."

15. Between August 2018 and January 2021, Plaintiff was denied the right to take a ten-minute rest break every day. RUBIO would deny Plaintiff's request for rest breaks and would say, "They pay you too much for the little that you do."

16. RUBIO would make Plaintiff work more than eight (8) hours a day, without paying Plaintiff an overtime rate for his overtime hours worked. RUBIO would tell Plaintiff, "If you work overtime, you can take more time off later." However, when Plaintiff asked for days off, RUBIO would make excuses, saying "it's too busy."

//

17. Plaintiff complained to RUBIO asking why he was not paid overtime and RUBIO responded, "you are getting paid on salary, you do not get overtime." However, Plaintiff was not a salaried employee.

18. Throughout Plaintiff's employment with Defendant, he was reprimanded more often and severely than other workers because of his nationality. When other workers made the same mistakes as Plaintiff, RUBIO, who is of Mexican nationality, would not discipline them. However, when Plaintiff did the same, Plaintiff would be insulted and told, "How can you be so stupid, Chilean" and "always problems with the Chilean" in front of other workers. Plaintiff is of Chilean nationality.

19. On or about July 2020, Plaintiff notified RUBIO that he would need foot surgery on both feet and would need three months off for each surgery. Plaintiff gave RUBIO his medical note that states that he required surgery on January 14, 2021. In response, RUBIO told Plaintiff, "Just a bunch of problems with you" and added, "for that time you're taking off, I'm not sure we will still have a job for you."

20. On or around August 6, 2020, Plaintiff tested positive for COVID. His doctor told him to take two weeks to quarantine and postpone his foot surgeries. Plaintiff promptly notified his supervisor, RUBIO, about him testing positive for COVID and gave RUBIO the doctor's note.

21. Plaintiff asked RUBIO if the two weeks of quarantine would be paid. RUBIO said he could not pay Plaintiff for those two weeks and suggested that Plaintiff use his accrued vacation time instead.

22. On or about August 20, 2020, Plaintiff returned to work, after his two-week quarantine, and was told by RUBIO, "you got saved Chilean" in a joking manner. Further, RUBIO told Plaintiff to "put more effort in" on his work because he took two weeks off due to COVID.

23. On or around December 20, 2020, Plaintiff provided RUBIO with a doctor's note that indicated his surgery would take place in January 2021. When Plaintiff requested a medical leave for his foot surgery, RUBIO replied, "Always trouble with you, Chilean."

24. On or around January 7, 2021, RUBIO told Plaintiff to go with him to a nearby horse hospital. There, RUBIO handed Plaintiff his last paycheck and was subsequently terminated. Plaintiff asked for the reason for his termination, but RUBIO did not provide any reason.

25. After terminating Plaintiff, RUBIO openly told other workers that he fired Plaintiff because he would need too much time off for his surgery and recovery.

## **FIRST CAUSE OF ACTION**
### **(FEHA Disability Discrimination)**
### **(Plaintiff Against All Defendants)**

26. Plaintiff incorporates all paragraphs above as though fully set forth herein.

27. Defendant is a business entity regularly employing at least the minimum number of employees upon which certain legal duties and obligations arise under various laws and statutes, including the FEHA. At all times herein mentioned in this complaint, Government Code §12940, Government Code §12926.1, and Title VII, were in full force and effect and were binding on the Defendants and the Defendants were subject to their terms.

28. Plaintiff FUENTES is, and at all times herein mentioned was, an "employee" who suffers from a "disability" as defined by Government Code §§12926, et seq. and §12940 et seq. and California Code of Regulations, Title 2, which limits one or more major life activities.

//

---

29. At all times herein mentioned, Plaintiff FUENTES was fully qualified and competent to perform duties of his position with a reasonable accommodation.

30. On or about August 16, 2016, Plaintiff FUENTES became employed by Defendant HFH, as a Helper.

31. In or about August 2018, RUBIO became Plaintiff's supervisor.

32. On or about July 2020, Plaintiff notified RUBIO that he would need foot surgery on both feet and would need three months off for each surgery. Plaintiff gave RUBIO his medical note that states that he required surgery on January 14, 2021. In response, RUBIO told Plaintiff, "Just a bunch of problems with you" and added, "for that time you're taking off, I'm not sure we will still have a job for you."

33. On or around August 6, 2020, Plaintiff tested positive for COVID. His doctor told him to take two weeks to quarantine and postpone his foot surgeries. Plaintiff promptly notified his supervisor, RUBIO, about him testing positive for COVID and gave RUBIO the doctor's note.

34. Plaintiff asked RUBIO if the two weeks of quarantine would be paid. RUBIO said he could not pay Plaintiff for those two weeks and suggested that Plaintiff use his accrued vacation time instead.

35. On or about August 20, 2020, Plaintiff returned to work, after his two-week quarantine, and was told by RUBIO, "you got saved Chilean" in a joking manner. Further, RUBIO told Plaintiff to "put more effort in" on his work because he took two weeks off due to COVID.

36. On or around December 20, 2020, Plaintiff provided RUBIO with a doctor's note that indicated his surgery would take place in January 2021. When Plaintiff requested a medical leave for his

1    foot surgery, RUBIO replied, "Always trouble with you, Chilean."

2

3    37.   On or around January 7, 2021, RUBIO told Plaintiff to go with him to a nearby horse hospital.

4          There, RUBIO handed Plaintiff his last paycheck and was subsequently terminated. Plaintiff

5          asked for the reason for his termination, but RUBIO did not provide any reason.

6

7    38.   After terminating Plaintiff, RUBIO openly told other workers that he fired Plaintiff because he

8          would need too much time off for his surgery and recovery.

9

10   39.   Defendants' adverse actions, including, but not limited to, terminating Plaintiff, were at least

11         in part, in retaliation of Plaintiff's disability.

12

13   40.   But for Plaintiff's disability, Defendants would not have taken adverse employment actions of

14         terminating him.

15

16   41.   As the legal result of Defendants' conduct, Plaintiff has suffered and continues to suffer

17         substantial losses of wages, salary, benefits and additional amounts of money that Plaintiff

18         would have received if Defendants had not discriminated against him as alleged above. As a

19         result of such discrimination and consequent harm, Plaintiff has suffered such damages in an

20         amount according to proof.

21

22   42.   As the further legal result of Defendants' conduct, Plaintiff has been harmed in that he has

23         suffered the intangible loss of such employment-related opportunities as experience and status

24         in the positions previously held by him, all to his damage in an amount according to proof.

25

26   43.   The above-cited conduct of Defendants was done with malice, fraud and oppression, and in

27         reckless disregard of Plaintiff's rights under the FEHA. Defendants consciously, intentionally

28         and in conscious disregard of his rights discriminated against Plaintiff because of his disability.

Plaintiff is thus entitled to recover punitive damages from Defendants in an amount according to proof.

44.  As the result of Defendants' discriminatory acts as alleged herein, Plaintiff is entitled to reasonable attorney's fees and costs of suit as provided by FEHA, Gov. Code § 12965(b).

## SECOND CAUSE OF ACTION

### (Failure to Accommodate in Violation of FEHA)

### (Plaintiff Against All Defendants)

45.  Plaintiff incorporates all paragraphs above as though fully set forth herein.

46.  Plaintiff FUENTES, at all relevant times herein, suffered a FEHA protected disability.

47.  On or about August 12, 2016, Plaintiff FUENTES became employed by Defendant HFH, as a Helper.

48.  In or about August 2018, RUBIO became Plaintiff's supervisor.

49.  On or about July 2020, Plaintiff notified RUBIO that he would need foot surgery on both feet and would need three months off for each surgery. Plaintiff gave RUBIO his medical note that states that he required surgery on January 14, 2021. In response, RUBIO told Plaintiff, "Just a bunch of problems with you" and added, "for that time you're taking off, I'm not sure we will still have a job for you."

50.  On or around August 6, 2020, Plaintiff tested positive for COVID. His doctor told him to take two weeks to quarantine and postpone his foot surgeries. Plaintiff promptly notified his supervisor, RUBIO, about him testing positive for COVID and gave RUBIO the doctor's note.

51. Plaintiff asked RUBIO if the two weeks of quarantine would be paid. RUBIO said he could not pay Plaintiff for those two weeks and suggested that Plaintiff use his accrued vacation time instead.

52. On or about August 20, 2020, Plaintiff returned to work, after his two-week quarantine, and was told by RUBIO, "you got saved Chilean" in a joking manner. Further, RUBIO told Plaintiff to "put more effort in" on his work because he took two weeks off due to COVID.

53. On or around December 20, 2020, Plaintiff provided RUBIO with a doctor's note that indicated his surgery would take place in January 2021. When Plaintiff requested a medical leave for his foot surgery, RUBIO replied, "Always trouble with you, Chilean."

54. On or around January 7, 2021, RUBIO told Plaintiff to go with him to a nearby horse hospital. There, RUBIO handed Plaintiff his last paycheck and was subsequently terminated. Plaintiff asked for the reason for his termination, but RUBIO did not provide any reason.

55. After terminating Plaintiff, RUBIO openly told other workers that he fired Plaintiff because he would need too much time off for his surgery and recovery.

56. Defendant has an affirmative duty under FEHA to reasonably accommodate disabled workers. Such duty arises regardless of whether the employee requested any accommodation. FEHA entitles disabled employees to preferential consideration in reassignment of existing employees. See Jensen v. Wells Fargo Bank, 85 Cal. App.4th 245 (2000).

57. Instead of accommodating Plaintiff, Defendants did not allow Plaintiff time off for his surgery and recovery.

//

58. At all times mentioned herein, Plaintiff FUENTES was willing and able to perform the duties and functions of his position or an alternate position if such reasonable accommodation had been made by Defendants, and each of them. At no time would the performance of the functions of the employment position, with a reasonable accommodation for Plaintiff's disabilities, have been a danger to Plaintiff's or any other person's health or safety, nor would it have created an undue hardship to the operations of Defendant's business.

59. As a direct and legal result of Defendants' failure to accommodate Plaintiff FUENTES' disability, Plaintiff has suffered and continues to suffer general, consequential, and special damages, including but not limited to substantial losses in earnings, other employment benefits, physical injuries, physical sickness, as well as emotional distress, plus medical expenses, future medical expenses, and attorneys' fees, all to his damage in an amount according to proof.

60. Said discrimination and/or refusal to accommodate/engage in interactive process was wrongful and justifies the imposition of punitive damages since refusing to accommodate Plaintiff FUENTES 'disability was against public policy. Defendants intentionally failed to accommodate Plaintiff, acted maliciously, fraudulently and oppressively, with the wrongful intention of injuring Plaintiff. Defendants acted with an evil purpose, in an intentional and deliberate manner, in violation of Plaintiff's civil rights, and/or with a conscious of Plaintiff's rights. Based upon the foregoing, Plaintiff is entitled to recover punitive damages in an amount according to proof from Defendants and each of them.

//
//
//
//
//
//

## THIRD CAUSE OF ACTION

### (Failure to Engage in the Interactive Process in Violation of FEHA)

### (Plaintiff Against All Defendants)

61. Plaintiff incorporates all paragraphs above as though fully set forth herein.

62. Plaintiff FUENTES, at all relevant times herein, suffered from a FEHA protected disability.

63. On or about August 12, 2016, Plaintiff FUENTES became employed by Defendant HFH, as a Helper.

64. On or about July 2020, Plaintiff notified RUBIO that he would need foot surgery on both feet and would need three months off for each surgery. Plaintiff gave RUBIO his medical note that states that he required surgery on January 14, 2021. In response, RUBIO told Plaintiff, "Just a bunch of problems with you" and added, "for that time you're taking off, I'm not sure we will still have a job for you."

65. On or around August 6, 2020, Plaintiff tested positive for COVID. His doctor told him to take two weeks to quarantine and postpone his foot surgeries. Plaintiff promptly notified his supervisor, RUBIO, about him testing positive for COVID and gave RUBIO the doctor's note.

66. Plaintiff asked RUBIO if the two weeks of quarantine would be paid. RUBIO said he could not pay Plaintiff for those two weeks and suggested that Plaintiff use his accrued vacation time instead.

67. On or about August 20, 2020, Plaintiff returned to work, after his two-week quarantine, and was told by RUBIO, "you got saved Chilean" in a joking manner. Further, RUBIO told Plaintiff to "put more effort in" on his work because he took two weeks off due to COVID.

68. On or around December 20, 2020, Plaintiff provided RUBIO with a doctor's note that indicated his surgery would take place in January 2021. When Plaintiff requested a medical leave for his foot surgery, RUBIO replied, "Always trouble with you, Chilean."

69. On or around January 7, 2021, RUBIO told Plaintiff to go with him to a nearby horse hospital. There, RUBIO handed Plaintiff his last paycheck and was subsequently terminated. Plaintiff asked for the reason for his termination, but RUBIO did not provide any reason.

70. After terminating Plaintiff, RUBIO openly told other workers that he fired Plaintiff because he would need too much time off for his surgery and recovery.

71. Instead of accommodating Plaintiff, Defendants did not allow Plaintiff time off for his surgery and recovery.

72. Plaintiff FUENTES did not cause the breakdown of the interactive process with Defendants. Rather, Defendants caused the breakdown in the interactive process with Plaintiff when they refused to provide Plaintiff accommodations for his disability.

73. Defendant did not engage in timely, good faith interactive process with Plaintiff to find an accommodation for Plaintiff's disability.

74. As a direct and legal result of Defendants' failure to engage in a good faith, timely interactive process, Plaintiff FUENTES has suffered and continues to suffer general, consequential, and special damages, including but not limited to substantial losses in earnings, other employment benefits, physical injuries, physical sickness, as well as emotional distress, plus medical expenses, future medical expenses, and attorneys' fees, all to his damage in an amount according to proof.

//

COMPLAINT AND DEMAND FOR JURY TRIAL

13

## FOURTH CAUSE OF ACTION

### (Discrimination on the Basis of National Origin)

### (Plaintiff Against All Defendants)

75. Plaintiff incorporates all paragraphs above as though fully set forth herein.

76. At all times herein mentioned in this complaint, Government Code section 12940 et seq., and California Constitution article I, section 8 were in full force and effect and was binding on the Defendants and the Defendants were subject to their terms, and therefore Defendants were required to refrain from violations of public policy, including discrimination based on national origin in violation of the FEHA.

77. At all times herein mentioned, Plaintiff was a member of a protected class, in that he is Chilean.

78. Defendant HFH was a business entity regularly employing at least the minimum number of employees upon which certain legal duties and obligations arise under various laws and statutes, including FEHA.

79. At all times herein mentioned, Plaintiff was fully qualified and competent to perform his respective duties. Nevertheless, Defendants engaged in a continuing course of national origin discrimination against Plaintiff.

80. Specifically, Plaintiff was reprimanded more often and severely than other workers of different nationalities. When other workers made the same mistakes as Plaintiff, RUBIO, who is of Mexican nationality, would not discipline them. However, when Plaintiff did the same, Plaintiff would be insulted and told, "How can you be so stupid, Chilean" and "always problems with the Chilean" in front of other workers.

//

81. On or about August 20, 2020, Plaintiff returned to work, after his two-week quarantine, and was told by RUBIO, "you got saved Chilean" in a joking manner. Further, RUBIO told Plaintiff to "put more effort in" on his work because he took two weeks off due to COVID.

82. On or around December 20, 2020, Plaintiff provided RUBIO with a doctor's note that indicated his surgery would take place in January 2021. When Plaintiff requested a medical leave for his foot surgery, RUBIO replied, "Always trouble with you, Chilean."

83. On or around January 7, 2021, RUBIO told Plaintiff to go with him to a nearby horse hospital. There, RUBIO handed Plaintiff his last paycheck and was subsequently terminated. Plaintiff asked for the reason for his termination, but RUBIO did not provide any reason.

84. As a direct and legal result of Defendants' discrimination actions against Plaintiff for his protected status herein referenced, Plaintiff has suffered and continues to suffer general, consequential and special damages including but not limited to substantial losses in earnings, other employment benefits, physical injuries, physical sickness, as well as emotional distress, plus medical expenses, future medical expenses, and attorneys' fees, all to his damage in an amount according to proof.

## FIFTH CAUSE OF ACTION

### (Harassment on the Basis of National Origin)

### (Plaintiff Against All Defendants)

85. The conduct of HFH created a hostile work environment for Plaintiff, making the conditions of his employment intolerable in direct contravention of various statutes and state law decisions, including but not limited to California Government Code §12940. HFH subjected Plaintiff to a hostile work environment due to, including but not limited to, harassment based on race and/or national original.

86. Throughout Plaintiff's employment with Defendant, he was reprimanded more often and severely than other workers because of his nationality. When other workers made the same mistakes as Plaintiff, RUBIO, who is of Mexican nationality, would not discipline them. However, when Plaintiff did the same, Plaintiff would be insulted and told, "How can you be so stupid, Chilean" and "always problems with the Chilean" in front of other workers. Plaintiff is of Chilean nationality.

87. On or about August 20, 2020, Plaintiff returned to work, after his two-week quarantine, and was told by RUBIO, "you got saved Chilean" in a joking manner. Further, RUBIO told Plaintiff to "put more effort in" on his work because he took two weeks off due to COVID.

88. On or around December 20, 2020, Plaintiff provided RUBIO with a doctor's note that indicated his surgery would take place in January 2021. When Plaintiff requested a medical leave for his foot surgery, RUBIO replied, "Always trouble with you, Chilean."

89. On or around January 7, 2021, RUBIO told Plaintiff to go with him to a nearby horse hospital. There, RUBIO handed Plaintiff his last paycheck and was subsequently terminated. Plaintiff asked for the reason for his termination, but RUBIO did not provide any reason.

90. Such harassment was sufficiently severe or pervasive that it altered the conditions of Plaintiff's employment, creating a hostile, abusive work environment and thereby endangering Plaintiff's physical health and making his working conditions intolerable. Said harassment was sufficiently extreme to amount to a change in the terms and conditions of Plaintiff's employment.

91. As a direct and legal result of Defendants' conduct, and each of them, Plaintiff has suffered and continues to suffer general, consequential, and special damages, including but not limited to substantial losses in earnings, other employment benefits, physical injuries, physical

sickness, as well as emotional distress, plus medical expenses, future medical expenses, and attorneys' fees, all to his damage in the amount according to proof.

### SIXTH CAUSE OF ACTION

**(Hostile Work Environment)**

**(Plaintiff Against All Defendants)**

92. Plaintiff incorporates the foregoing paragraphs as if fully restated herein.

93. Defendant RUBIO's conduct created a hostile work environment for Plaintiff, making the conditions of his employment intolerable in direct contravention of various statutes and state law decisions, including but not limited to California Government Code §12940(h) and (j). Plaintiff was subjected to a hostile work environment, including but not limited to, inappropriate disability and national origin harassment. The harassment by Defendant RUBIO was based on Plaintiff's disability and national origin. Such harassment was so severe and pervasive that it altered the conditions of Plaintiff's employment, creating a hostile, abusive work environment and thereby endangering Plaintiff's physical health and making his working conditions intolerable. Said harassment was sufficiently extreme to amount to a change in the terms and conditions of Plaintiff's employment.

94. On or about August 12, 2016, Plaintiff FUENTES became employed by Defendant HFH, as a Helper.

95. Throughout Plaintiff's employment with Defendant, he was reprimanded more often and severely than other workers because of his nationality. When other workers made the same mistakes as Plaintiff, RUBIO, who is of Mexican nationality, would not discipline them. However, when Plaintiff did the same, Plaintiff would be insulted and told, "How can you be so stupid, Chilean" and "always problems with the Chilean" in front of other workers. Plaintiff

1   is of Chilean nationality.

2

3   96.   On or about July 2020, Plaintiff notified RUBIO that he would need foot surgery on both feet

4         and would need three months off for each surgery. Plaintiff gave RUBIO his medical note that

5         states that he required surgery on January 14, 2021. In response, RUBIO told Plaintiff, "Just a

6         bunch of problems with you" and added, "for that time you're taking off, I'm not sure we will

7         still have a job for you."

8

9   97.   On or around August 6, 2020, Plaintiff tested positive for COVID. His doctor told him to take

10        two weeks to quarantine and postpone his foot surgeries. Plaintiff promptly notified his

11        supervisor, RUBIO, about him testing positive for COVID and gave RUBIO the doctor's note.

12

13  98.   Plaintiff asked RUBIO if the two weeks of quarantine would be paid. RUBIO said he could

14        not pay Plaintiff for those two weeks and suggested that Plaintiff use his accrued vacation time

15        instead.

16

17  99.   On or about August 20, 2021, Plaintiff returned to work, after his two-week quarantine, and

18        was told by RUBIO, "you got saved Chilean" in a joking manner. Further, RUBIO told

19        Plaintiff to "put more effort in" on his work because he took two weeks off due to COVID.

20

21  100.  On or around December 20, 2020, Plaintiff provided RUBIO with a doctor's note that indicated

22        his surgery would take place in January 2021. When Plaintiff requested a medical leave for his

23        foot surgery, RUBIO replied, "Always trouble with you, Chilean."

24

25  101.  On or around January 7, 2021, RUBIO told Plaintiff to go with him to a nearby horse hospital.

26        There, RUBIO handed Plaintiff his last paycheck and was subsequently terminated. Plaintiff

27        asked for the reason for his termination, but RUBIO did not provide any reason.

28  //

COMPLAINT AND DEMAND FOR JURY TRIAL

102. After terminating Plaintiff, RUBIO openly told other workers that he fired Plaintiff because he would need too much time off for his surgery and recovery.

103. Such harassment was so severe and pervasive that it altered the conditions of Plaintiff's employment, creating a hostile, abusive work environment and thereby endangering Plaintiff's physical health and making his working conditions intolerable. Said harassment was sufficiently extreme to amount to a change in the terms and conditions of Plaintiff's employment.

104. As a direct and legal result of Defendants' conduct, and each of them, Plaintiff has suffered and continues to suffer general, consequential, and special damages, including but not limited to substantial losses in earnings, other employment benefits, as well as emotional distress, future medical expenses, and attorneys' fees, all to their damage in the amount according to proof.

105. Said actions by Defendants justify the imposition of punitive damages in that the actions were against public policy. Defendants committed the acts alleged herein maliciously, fraudulently and oppressively, with the wrongful intention of injuring Plaintiff, from an improper and evil motives amounting to malice in conscious disregard of Plaintiff's rights.

**SEVENTH CAUSE OF ACTION**

**(FEHA Retaliation)**

**(Plaintiff Against All Defendants)**

106.    Plaintiff incorporates all paragraphs above as though fully set forth herein.

107. At all times mentioned in this complaint, Defendants regularly employed five or more persons, bringing Defendants within the provisions of the FEHA, Gov. Code, § 12926(d).

108. At all times herein mentioned in this complaint, California Government Code Section 12940 et seq. was in full force and effect and binding on the Defendant and the Defendant was subject to its terms. Defendant terminated Plaintiff, for reasons and in a manner contrary to the Fair Employment and Housing Act ("FEHA"), on a pre-textual basis, because of his disability, as herein alleged.

109. On or about August 16, 2016, Plaintiff FUENTES became employed by Defendant HFH, as a Helper.

110. In or about August 2018, RUBIO became Plaintiff's supervisor.

111. On or about July 2020, Plaintiff notified RUBIO that he would need foot surgery on both feet and would need three months off for each surgery. Plaintiff gave RUBIO his medical note that states that he required surgery on January 14, 2021. In response, RUBIO told Plaintiff, "Just a bunch of problems with you" and added, "for that time you're taking off, I'm not sure we will still have a job for you."

112. On or around August 6, 2020, Plaintiff tested positive for COVID. His doctor told him to take two weeks to quarantine and postpone his foot surgeries. Plaintiff promptly notified his supervisor, RUBIO, about him testing positive for COVID and gave RUBIO the doctor's note.

113. Plaintiff asked RUBIO if the two weeks of quarantine would be paid. RUBIO said he could not pay Plaintiff for those two weeks and suggested that Plaintiff use his accrued vacation time instead.

114. On or about August 20, 2020, Plaintiff returned to work, after his two-week quarantine, and was told by RUBIO, "you got saved Chilean" in a joking manner. Further, RUBIO told Plaintiff to "put more effort in" on his work because he took two weeks off due to COVID.

115. On or around December 20, 2020, Plaintiff provided RUBIO with a doctor's note that indicated his surgery would take place in January 2021. When Plaintiff requested a medical leave for his foot surgery, RUBIO replied, "Always trouble with you, Chilean."

116. On or around January 7, 2021, RUBIO told Plaintiff to go with him to a nearby horse hospital. There, RUBIO handed Plaintiff his last paycheck and was subsequently terminated. Plaintiff asked for the reason for his termination, but RUBIO did not provide any reason.

117. After terminating Plaintiff, RUBIO openly told other workers that he fired Plaintiff because he would need too much time off for his surgery and recovery.

118. In retaliation, Defendants subjected Plaintiff to an adverse employment action by terminating Plaintiff. Said retaliation was in violation of public policy because the sole and actual reason for the adverse employment action was that Plaintiff engaged in protected activity under FEHA.

119. Plaintiff is informed and believes that his disability was a factor in the decision to terminate his employment.

120. Defendant's conduct above described is in violation of various statutes and state law decisions, including California Government Code Section 12940 et seq., due to Plaintiff's protected classification.

121. As a direct and legal result of Defendant's discrimination and retaliatory actions against Plaintiff for his complaints and objections herein referenced, Plaintiff has suffered and continues to suffer general, consequential and special damages including but not limited to substantial losses in earnings, other employment benefits, physical injuries, physical sickness, as well as emotional distress, plus medical expenses, future medical expenses, and attorneys'

1  fees, all to his damage in an amount according to proof.

2

3  **EIGHTH CAUSE OF ACTION**

4  **(Violation of the Families First Coronavirus Response Act (FFCRA))**

5  **(Plaintiff Against All Defendants)**

6

7  122.   Plaintiff incorporates all paragraphs above as though fully set forth herein.

8

9  123.   Effective April 1, 2020, the FFCRA provides for up to 80 hours of paid sick time to eligible

10         full-time employees who are unable to work or telework due to the effects of COVID-19

11         through the Emergency Paid Sick Leave Act. (29 U.S.C.A. §2601).

12

13  124.   The FFCRA also provides for an additional 10 weeks of family and medical leave to eligible

14         employees who are unable to work or telework due to the effects of COVID-19 through the

15         Emergency Family and Medical Leave Expansion Act.

16

17  125.   The FFCRA expressly identifies enforcement of any and all penalties arising from violations

18         of the Emergency Paid Sick Leave Act and the Emergency Family and Medical Leave

19         Expansion Act shall be governed by relevant sections of the FLSA, as set forth in more detail

20         below.

21

22  126.   Plaintiff is informed and believes, and alleges thereon that at all relevant times herein,

23         Defendants knew that Plaintiff was an eligible employee within the meaning of the FLSA and

24         FFCRA.

25

26  127.   On or about August 12, 2016, Plaintiff FUENTES became employed by Defendant HFH, as a

27         Helper.

28  //

---

COMPLAINT AND DEMAND FOR JURY TRIAL

128. On or around August 6, 2020, Plaintiff tested positive for COVID. His doctor told him to take two weeks to quarantine and postpone his foot surgeries. Plaintiff promptly notified his supervisor, RUBIO, about him testing positive for COVID and gave RUBIO the doctor's note.

129. Plaintiff asked RUBIO if the two weeks of quarantine would be paid. RUBIO said he could not pay Plaintiff for those two weeks and suggested that Plaintiff use his accrued vacation time instead.

130. On or about August 20, 2020, Plaintiff returned to work, after his two-week quarantine, and was told by RUBIO, "you got saved Chilean" in a joking manner. Further, RUBIO told Plaintiff to "put more effort in" on his work because he took two weeks off due to COVID.

131. On or around January 7, 2021, RUBIO told Plaintiff to go with him to a nearby horse hospital. There, RUBIO handed Plaintiff his last paycheck and was subsequently terminated. Plaintiff asked for the reason for his termination, but RUBIO did not provide any reason.

132. Defendants were required to grant Plaintiff's need for leave and to pay Plaintiff at two thirds of his regular rate of pay, up to $200 per day and $12,000 in the aggregate (over a 12-week period).

133. The FFCRA makes it unlawful for an employer to discharge, discipline, or in any other manner discriminate against an employee who takes leave in accordance with the FFCRA.

134. Defendants violated the FFCRA and the FSLA by, inter alia, (1) willfully terminating Plaintiff in retaliation for exercising his right to leave under the FFCRA and requesting accommodation under the same due to COVID-19 related concerns.

//

//

135. An employer who willfully violates section 5104 of the FFCRA is considered to be in violation of section 15(a)(3) of the FLSA, and is subject to the penalties described in sections 16 and 17 of the same (29 U.S.C. 216, 217). Penalties under section 16 and 17 of the FLSA include, but are not limited to, lost wages, an equivalent amount of liquidated damages, and attorney's fees and costs.

136. As an actual and proximate result of Defendants' conduct, and each of them, Plaintiff has suffered and continues to suffer damages in the form of lost wages, earnings, and other economic benefits, the exact amount of which will be proven at trial. Thus, Plaintiff is entitled to "such legal or equitable relief as may be appropriate to effectuate the purposes of section 215(a)(3) including without limitation reinstatement, promotion, and the payment of wages lost and an additional equal amount as liquidated damages." (29 U.S.C.A §216).

137. As a direct and legal result of Defendants' conduct, and each of them, Plaintiff has suffered and continues to suffer general, consequential, and special damages, including but not limited to substantial losses in earnings, other employment benefits, physical injuries, physical sickness, as well as emotional distress, plus medical expenses, future medical expenses, and attorneys' fees (including expert costs), all to his damage in the amount according to proof.

138. The above-mentioned actions of the Defendants and their agents, and each of them, were done willfully. Plaintiff is entitled to reasonable attorneys' fees.

//
//
//
//
//
//
//

## NINTH CAUSE OF ACTION

**(Violation of California Labor Code §§ 226.7 And 512)**

**(Failure to Provide Meal and Rest Breaks)**

**(Plaintiff Against All Defendants)**

139. Plaintiff incorporates all paragraphs above as though fully set forth herein.

140. Plaintiff is informed and believes, and thereon allege that California Labor Code §§ 226.7 and 512 were in full force and effect and binding on Defendants during all times mentioned in this Complaint. Said section requires employers to comply with all Industrial Welfare Commission Wage Orders governing meal and rest periods.

141. Plaintiff is informed and believe, and thereon allege, that the IWC Wage Orders were in full force and effect and govern when employers, including Defendants, must give employee breaks for meal and rest periods. The Wage Orders state in pertinent part that employers must provide at least thirty minutes of meal periods for every five hours of work and another thirty-minute period if the work period is ten hours or more. Furthermore, the IWC Wage Orders state in pertinent part that employees must be given at least a ten-minute rest period for every four (4) hours or major fraction thereof.

142. During the entirety of his employment with Defendants, Plaintiff was often denied the ability to take their meal breaks and rest breaks. In these instances, Plaintiff was not paid a meal break or rest break premium, in violation of IWC Wage Orders and California Labor Code §§ 226.7 and 512.

143. Specifically, Between August 2018 and January 2021, Plaintiff was habitually denied his legally mandated, uninterrupted meal periods. During the entirety of Plaintiff's employment with Defendant, Plaintiff's meal break was interrupted or not provided at all. Specifically,

RUBIO would often interrupt Plaintiff's lunch to make him work. When Plaintiff would inform RUBIO that he was unable to help because he was on his lunch break, RUBIO would reply, "You can eat later" and force Plaintiff to work even when there were other employees available on duty.

144. Throughout Plaintiff's employment with Defendant, Plaintiff was unable to take a meal break within his fifth hour of work. Plaintiff and other employees complained to RUBIO and would say, "Please let us go to lunch, we are hungry." RUBIO would deny their request and reply, "Well I'm not hungry yet."

145. Between August 2018 and January 2021, Plaintiff was denied the right to take a ten-minute rest break every day. RUBIO would deny Plaintiff's request for rest breaks and would say, "They pay you too much for the little that you do."

146. Plaintiff is informed and believe, and thereon allege, that The Wage Orders and the California Labor Code mandate that Defendants must pay Plaintiff one hour of pay at Plaintiff's regular rate of pay for every missed meal and rest period. Plaintiff is thereby entitled to these penalties in an amount to be proven at trial, and also prays for all other remedies available under the law.

## **TENTH CAUSE OF ACTION**

### **(Violation of California Labor Code §§ 510, 1194 & 1198)**

### **(Unpaid Overtime)**

### **(Plaintiff Against All Defendants)**

147. Plaintiff incorporates all paragraphs above as though fully set forth herein.

//

//

148. California Labor Code § 510 provides that employees in California shall not be employed more than eight hours in any workday or 40 hours in a workweek unless they receive additional compensation beyond their regular wages in amounts specified by law.

149. California Labor Code §§ 1194 and 1198 provide that employees in California shall not be employed more than eight hours in any workday unless they receive additional compensation beyond their regular wages in amounts specified by law. Additionally, California Labor Code § 1198 states that the employment of an employee for longer hours than those fixed by the Industrial Welfare Commission is unlawful. The governing Wage Order of the Industrial Welfare Commission requires, among other things, payment of a premium wage rate for all hours worked in excess of 8 hours per day or 40 hours per week.

150. At all times relevant hereto, Defendants failed to pay Plaintiff overtime compensation for the hours he worked in excess of the maximum hours permissible by law as required by California Labor Code § 510 and 1198.

151. RUBIO would make Plaintiff work more than eight (8) hours a day, without paying Plaintiff an overtime rate for his overtime hours worked.  RUBIO would tell Plaintiff, "If you work overtime, you can take more time off later." However, when Plaintiff asked for days off, RUBIO would make excuses, saying "it's too busy."

152. Plaintiff complained to RUBIO asking why he was not paid overtime and RUBIO responded, "you are getting paid on salary, you do not get overtime." However, Plaintiff was not a salaried employee.

153. During Plaintiff's employment, Defendants failed to compensate Plaintiff for all overtime hours worked in excess of eight hours per day and/or 40 hours per week as required by Labor Code §§ 510 and 1194. Specifically, Plaintiff was either not paid for hours worked in excess

of 8 hours in a day, or Plaintiff was not paid the overtime rate for applicable overtime hours worked. This failure was due to Defendants improperly classifying Plaintiff as an exempt employee.

154. At all times relevant hereto, Defendants failed to pay Plaintiff overtime compensation for the hours he worked in excess of the maximum hours permissible by law as required by California Labor Code § 510 and 1198. Plaintiff was required to work overtime hours without receiving overtime pay.

155. By virtue of Defendants' unlawful failure to pay additional, premium rate compensation to Plaintiff for overtime hours worked, Plaintiff suffered, and will continue to suffer, damages in amounts which are presently unknown to him, and which will be ascertained according to proof at trial.

156. Plaintiff requests recovery of overtime compensation according to proof, interest, attorney's fees and costs pursuant to California Labor Code § 1194(a), as well as the assessment of any statutory penalties against Defendants, in a sum as provided by the California Labor Code and/or other statutes. Further Plaintiff is entitled to seek and recover reasonable attorneys' fees and costs pursuant to California Labor Code § 1194.

## ELEVENTH CAUSE OF ACTION

### (Violation of California Labor Code § 226(A))

### (Inaccurate Wage Statements)

### (Plaintiff Against All Defendants)

157. Plaintiff incorporates all paragraphs above as though fully set forth herein.

//

//

158. At all material times set forth herein, California Labor Code § 226(a) provides that every employer shall furnish each of his or her employees an accurate itemized wage statement in writing showing nine pieces of information, including: (1) gross wages earned, (2) total hours worked by the employee, (3) the number of piece-rate units earned and any applicable piece rate if the employee is paid on a piece-rate basis, (4) all deductions, provided that all deductions made on written orders of the employee may be aggregated and shown as one item, (5) net wages earned, (6) the inclusive dates of the period for which the employee is paid, (7) the name of the employee and the last four digits of his or her social security number or an employee identification number other than a social security number, (8) the name and address of the legal entity that is the employer, and (9) all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee.

159. As a result of Defendants' violation of California Labor Code section 226(a), Plaintiff has suffered an injury and damage to his statutorily protected rights.

160. Specifically, Plaintiff was injured by Defendants' intentional violation of California Labor Code 226(a) because she was denied both his legal right to receive, and his protected interest in receiving, accurate, itemized wage statements under California Labor Code section 226(a).

161. Plaintiff was also injured as a result of having to bring this action to attempt to obtain correct wage information following Defendants' refusal to comply with many of the mandates of California's Labor Code and related laws and regulations.

162. Under California Labor Code section 226(e), Plaintiff is entitled to recover from Defendants the greater of his actual damages caused by Defendants' failure to comply with California Labor Code section 226(a), or an aggregate penalty not exceeding four thousand dollars ($4,000).

//

COMPLAINT AND DEMAND FOR JURY TRIAL

## TWELFTH CAUSE OF ACTION

**(Violation of California Labor Code § 200-204)**

**(Waiting Time Penalties)**

**(Plaintiff Against All Defendants)**

163. Plaintiff incorporates by reference and realleges each of the foregoing paragraphs.

164. At all times herein set forth, California Labor Code §§ 200 through 204 provide that if an employer discharges an employee, the wages earned and unpaid at the time of discharge are due and payable immediately, and that if an employee voluntarily leaves his or her employment, his or her wages shall become due and payable not later than 72 hours thereafter, unless the employee has given 72 hours previous notice of his or her intention to quit, in which case the employee is entitled to his or her wages at the time of quitting.

165. Plaintiff's paychecks did not include all wages owed to Plaintiff as Defendants failed to pay for meal and rest break premiums as well as overtime pay that Plaintiff was entitled to.

166. Defendant's failure to pay Plaintiff's wages earned and unpaid at the time of discharge is in violation of California Labor Code §§ 200 through 204.

167. California Labor Code § 203 provides that if an employer willfully fails to pay wages owed, in accordance with sections 201 and 202, then the wages of the employee shall continue as a penalty from the due date, and at the same rate until paid or until an action is commenced; but the wages shall not continue for more than 30 days.

168. Plaintiff is entitled to recover from Defendants additionally accruing wages for each day not paid, at the regular daily rate of pay, up to 30 days maximum pursuant to California Labor Code § 203.

## THIRTEENTH CAUSE OF ACTION

### Violation of California Business & Professions Code §§ 17200, et seq.

### (Plaintiff Against All Defendants)

169. Plaintiff incorporates by reference and realleges each of the foregoing paragraphs.

170. Defendants' conduct, as alleged herein, has been, and continues to be, unfair, unlawful, and harmful to Plaintiff, other employees, and to the general public. Plaintiff seeks to enforce important rights affecting the public interest within the meaning of Code of Civil Procedure section 1021.5.

171. Defendants' activities, as alleged herein, are violations of California law, and constitute unlawful business acts and practices in violation of California Business & Professions Code sections 17200, et seq.

172. A violation of California Business & Professions Code § 17200, et seq. may be predicated on the violation of any state or federal law. All acts described herein as violations of, among other things, California Labor Code and Industrial Welfare Commission Wage Orders, are unlawful and in violation of public policy; and in addition are immoral, unethical, oppressive, fraudulent and unscrupulous, and thereby constitute unfair, unlawful and/or fraudulent business practices in violation of California Business and Professions Code § 17200, et seq.

173. Defendants' denial of meal and rest breaks violated Labor Code §§ 226.7 & 512, as alleged in detail above, constitutes unlawful and/or unfair activity prohibited by Business and Professions Code § 17200, et seq.

174. Defendants' failure to compensate Plaintiff for overtime hours worked, as alleged in detail above, constitutes unlawful and/or unfair activity prohibited by Business and Professions Code

§ 17200, et seq.

175. Defendants' failure to provide accurate itemized wage statements in accordance with Labor Code § 226, as alleged in detail above, constitutes unlawful and/or unfair activity prohibited by Business and Professions Code § 17200, et seq.

176. Defendants' violation of the FFCRA, as alleged in detail above, constitutes unlawful and/or unfair activity prohibited by Business and Professions Code § 17200, et seq.

177. Pursuant to California Business & Professions Code § 17200, et seq., Plaintiff is entitled to restitution, including but not limited to, of wages withheld and retained by Defendants during a period from four years prior to the filing of this complaint and for employer payroll taxes; a permanent injunction requiring Defendants to pay all outstanding wages due to Plaintiff; an award of attorneys' fees pursuant to California Code of Civil Procedure § 1021.5 and other applicable laws; and an award of costs.

## **PRAYER**

1.   For general unpaid wages at overtime wage rates and such general and special damages as may be appropriate;

2.   For damages according to proof, including loss of earnings, deferred compensation, and other employment benefits;

3.   For general damages, according to proof;

4.   For other special damages according to proof, including but not limited to reasonable medical expenses;

5. For prejudgment interest on lost wages and benefits;

6. For statutory penalties pursuit to California Labor Code §§ 226(e);

7. For restitution of unpaid wages to Plaintiff and prejudgment interest from the day such amount was due and payable;

8. For injunctive relief pursuit to California Business & Professions Code §§ 17200, et seq.;

9. For interest on the amount of unpaid wages, and other employee benefits at the prevailing legal rate;

10. For punitive damages; and

11. For each such other and further relief as the court deems just and proper.


Dated: November 5, 2021                          WEST COAST EMPLOYMENT LAWYERS, APLC


By: _____
                                                  Ronald L. Zambrano, Esq.
                                                  Crystal F. Mohsin, Esq.
                                                  Attorneys for Plaintiff,
                                                  JERRY FUENTES

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands trial by jury.

Dated:  November 5, 2021                      WEST COAST EMPLOYMENT LAWYERS, APLC


By: _____
        Ronald L. Zambrano, Esq.
        Crystal F. Mohsin, Esq.
        Attorneys for Plaintiff,
        JERRY FUENTES

# SISKIYOU COUNTY SUPERIOR COURT
## YREKA BRANCH

FILED
SUPERIOR COURT OF CALIFORNIA
COUNTY OF SISKIYOU

NOV -5 2021

BY: Endorsed - T. O'Brien
DEPUTY CLERK

**Case No.** *CUCV 21-1194*

**NOTICE OF CASE MANAGEMENT
PROCEDURES; AND NOTICE
OF INITIAL CONFERENCE**

---

**WARNING: Along with this Notice, you may have been served with a Summons and Complaint (or Cross-Complaint) that require your immediate attention.**

---

### *PLEASE READ IMMEDIATELY!*

*The Court is no longer setting initial status conferences. Nevertheless, counsel and self-represented parties are expected to comply with the requirements set forth in Rule 201.7 of the California Rules of Court regarding timely service of process, filing proofs of service, and requests for entry of default. Failure to comply with CRC Rule 201.7 may result in the issuance of an Order to Show Cause why those requirements have not been satisfied.*

*Consult the Local Rules of Court concerning requirements with respect to case management conferences; violation of the Local Rules may result in the imposition of sanctions.*

**Date and Time of Initial Conference**
**An initial case management conference** will be conducted on **Thursday, *5-12-22*, at 9:30 AM** in the above-entitled court. Counsel and self-represented parties are directed to comply with the provisions of CRC 3.724 and 3.727 prior to the initial case management conference.

**Service of this Notice**
Plaintiff must serve this Notice on each defendant at the time of service of the Complaint; and on all intervenors and interpleaders within ten (10) days of receipt of service from said parties of any Complaint in intervention or interpleader. All cross-complainants must serve this Notice on each cross-defendant at the time the Cross-Complaint is served.

**Telephonic Appearances**
Counsel may appear telephonically at the case management conference without prior leave of court. Counsel wishing to appear telephonically must submit a request directly to the service provider, **CourtCall®**, by calling 1-888-882-6878. **Requests to CourtCall® must be made no later than five (5) calendar days prior to the telephonic appearance.**

**Case Management Conference Statements**
The case management statement must be prepared on Judicial Council Form CM-110, and it must be **filed and served no later than fifteen (15) days** before the case management conference. Case management statements must be responsive and reasonably detailed. The Court encourages counsel to file joint case management conference statements, pursuant to CRC Rule 212(g)(2), whenever it would be expedient to do so.

---

**NOTICE RE JURY FEE DEPOSIT:** The Court advises counsel and parties *in pro per* to review the provisions of Code of Civil Procedure §631et seq.. Fees deposited after June 27, 2012 will be non-refundable. **At least one party demanding a jury on each side of a civil case shall pay a nonrefundable fee of one hundred fifty dollars ($150) and that fee is due on or before the date scheduled for the initial case management conference in the action.**

---

<u>Alternative Dispute Resolution</u>
Options for Resolving Your Dispute



## There Are Alternatives to Going to Trial

Did you know that 95 percent of all civil cases filed in court are resolved without going to trial? Many people use processes other than trial to resolve their disputes. These alternative processes, known as Alternative Dispute Resolution or ADR, are typically less formal and adversarial than trial, and many use a problem-solving approach to help the parties reach agreement.

## Advantages of ADR

- **Save Time:** A dispute often can be settled or decided much sooner with ADR; often in a matter of months, even weeks, while bringing a lawsuit to trial can take a year or more.
- **Save Money:** When cases are resolved earlier through ADR, the parties may save some of the money they would have spent on attorney fees, court costs, and experts' fees.
- **Increase Control Over the Process and the Outcome:** In ADR, parties typically play a greater role in shaping both the process and its outcome. In most ADR processes, parties have more opportunity to tell their side of the story than they do at trial. Some ADR processes, such as mediation, allow the parties to fashion creative resolutions that are not available in a trial. Other ADR processes, such as arbitration, allow the parties to choose an expert in a particular field to decide the dispute.
- **Preserve Relationships:** ADR can be a less adversarial and hostile way to resolve a dispute. For example, an experienced mediator can help the parties effectively communicate their needs and point of view to the other side. This can be an important advantage where the parties have a relationship to preserve.
- **Increase Satisfaction:** In a trial, there is typically a winner and a loser. The loser is not likely to be happy, and even the winner may not be completely satisfied with the outcome. ADR can help the parties find win-win solutions and achieve their real goals. This, along with all of ADR's other potential advantages, may increase the parties' overall satisfaction with both the dispute resolution process and the outcome.
- **Improve Attorney-Client Relationships:** Attorneys may also benefit from ADR by being seen as problem-solvers rather than combatants. Quick, cost-effective, and satisfying resolutions are likely to produce happier clients and thus generate repeat business from clients and referrals of their friends and associates.

Because of these potential advantages, it is worth considering using ADR early in a lawsuit or even before you file a lawsuit.

**What Are the ADR Options?** The most commonly used ADR processes are mediation, arbitration, neutral evaluation, and settlement conferences.

## *Mediation*

In mediation, an impartial person called a "mediator" helps the parties try to reach a mutually acceptable resolution of the dispute. The mediator does not decide the dispute but helps the parties communicate so they can try to settle the dispute themselves. Mediation leaves control of the outcome with the parties.

**PROOF OF SERVICE**

**CASE NAME:**      **Fuentes v. Humanity for Horses, et al.**
**CASE NO.:**

I am employed in the County of Sacramento.  I am over the age of eighteen years and not a party to the within above-entitled action.  My business address is 1545 River Park Drive, Suite 204, Sacramento, CA 95815.

I am familiar with this office's practice whereby the mail is sealed, given the appropriate postage and placed in a designated mail collection area.  Each day's mail is collected and deposited in a United States mailbox after the close of each day's business.

On the date set forth below, I served the following:  **NOTICE OF REMOVAL OF ACTION UNDER 28 U.S.C. § 1441(a) FEDERAL QUESTION** (and civil cover sheet)

X      United States Mail - on all parties in said action by placing a true copy of the above described document(s) enclosed in a sealed envelope in the designated area for outgoing mail addressed as set forth below.

Neama Rahmani, Esq.
Ronald L. Zambrano, Esq.
Crystal F. Mohsin, Esq.
West Coast Employment Lawyers, a PLC
1147 South Hope Street
Los Angeles, CA  90015
(213) 927-3700
FAX (213) 927-3701
E-mails:  efilings@westcoasttriallawyers.com / ron@westcoasttriallawyers.com /
crystal@westcoasttriallawyers.com

X      FEDERAL: I declare that I am employed in the office of a member of the bar of this Court at whose direction service was made.

I declare under penalty of perjury that the foregoing is true and correct and that this declaration was executed on December 17, 2021 at Sacramento, California.

_____
SUSAN M. ALDRIDGE

JOHNSON SCHACHTER & LEWIS
A PROFESSIONAL LAW CORPORATION
1545 RIVER PARK DRIVE, SUITE 204
SACRAMENTO, CA 95815
TELEPHONE: (916) 921-5800 / FACSIMILE: (916) 921-0247